James T. Cahalan, Esq., Bar No. 166961
CAHALAN & ASSOCIATES
2100 Northrop Avenue, Suite 900
Sacramento, California  95825
Telephone: (916) 483-8600
Facsimile: (916) 483-8607
jcahalan@cahalanlaw.com

Edward Dudensing, Esq., Bar No. 182221
THE LAW OFFICE
925 G Street
Sacramento, CA  95814
ed@dudensinglaw.com

Attorneys for Plaintiff
JAMES C. DONOVAN

Kenneth R. O'Brien, Bar No. 072128
Aaron D. Crews, Bar No. 235381
LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
Telephone:    916.830.7200

Attorneys for Defendants
AMERICAN PROPERTY DEVELOPMENT, INC.,
AMERICAN CAPITAL HOMES, INC., ROGER
KUULA, GREG BORREGO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. DONOVAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>AMERICAN CAPITAL GROUP, INC., a<br>Washington Corporation, AMERICAN<br>PROPERTY DEVELOPMENT, INC., a<br>Washington Corporation, AMERICAN<br>CAPITAL HOMES, INC., a Washington<br>Corporation, ROGER KUULA, an<br>individual, GREG BORREGO, an<br>individual, and DOES 1 through 20,<br>inclusive,<br><br>                    Defendants. | Case No.  2:07-CV-02160-GEB-DAD<br><br>**JOINT PRETRIAL CONFERENCE<br>STATEMENT**<br><br>Pretrial Conference date: July 20, 2009<br>Time:  11:00 a.m.<br>Courtroom:  10<br>Judge:  Hon. Garland E. Burrell, Jr.<br><br>Complaint Filed:  September 7, 2007<br>First Amended Complaint:  May 23, 2008<br><br>Trial Date:  August 18, 2009 |

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

# I.
# THE ACTION

**A.    Jurisdiction – Venue**

Jurisdiction and venue are predicated on 28 U.S.C. section 1332.  Venue lies in the Eastern District of California, the judicial district in which the claims arose, pursuant to U.S.C. section 1391(b).  The parties do not contest jurisdiction or venue.

**B.    Jury – Non-Jury**

Defendants consent to a non-jury trial.  Plaintiff has timely requested a jury trial.

# II.
# THE FACTUAL BASIS OF THE ACTION

**A.    Undisputed Facts**

**1.**    Plaintiff James C. Donovan is an individual who resides in Sacramento County, California;

**2.**    Entity Defendants American Property Development, Inc. and American Capital Homes, Inc., are corporations organized under the laws of the State of Washington.

**3.**    Individual Defendant Roger William Kuula is an individual residing in the State of Washington and an officer, director, and managing agent of Defendants APD and ACH, as well as American Property Development, NorCal, LLC.

**4.**    American Property Development, NorCal, LLC is a wholly owned subsidiary of American Property Development, Inc.

**5.**    Individual Defendant Greg Borrego is an individual residing in the State of Washington and during the time period relevant to this action, was an officer, director and/or managing agent of Defendant APD.

**6.**    American Capital Group, Inc. is not a corporation or other legal entity.  There is no such legal entity.  "American Capital Group" is a trade name.

**7.**    Defendant American Capital Homes, Inc. ("ACH") provides administrative, legal, personnel, and payroll services for all ACG-related companies.

**8.**    Corporate Defendants American Property Development, Inc. and American Capital Homes, Inc. deny that they are individually, jointly and/or severally liable as the employer of Plaintiff.

**9.**    Individual Defendants Kuula and Borrego deny they are individually, jointly and/or severally liable on any of Plaintiff's claims.

**10.**    Donovan was based out of Sacramento, California.

**11.**    After the land is developed, separate American Capital Group Companies manage the property and sell shares of it to outside investors.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**12.**    The American Capital Group Companies specialize in building, developing, managing, and syndicating garden-style apartment complexes.

**13.**    Shortly after being hired, Donovan executed a 2004 Parcel Acquisition Bonus Plan.

**14.**    The 2004 Parcel Acquisition Bonus Plan lasted one year, applying only to properties put under contract by December 31, 2004.

**15.**    Donovan was paid $40,000.00 under the Parcel Acquisition Plan for two of the Parcels he placed under contract in 2004.

**16.**    The American Capital Group has an annual Profit Sharing Plan.

**17.**    Pursuant to these plans, the employees working for each of the entities comprising the American Capital Group of companies are provided an opportunity to share in the companies' profits, provided specific benchmarks are met, as described in the Plan.

**18.**    In July of 2007, APD published a draft of the proposed 2007 Profit Sharing Plan to its employees at the annual Manager's Meeting.

**19.**    After the proposed 2007 Profit Sharing Plan was published, Plaintiff and another California employee, Matthew Enochs, stated that the non-competition clause might not be legal in California.

**20.**    Plaintiff received hard copies of the final version of the 2007 Profit Sharing Plan on August 8, 2007.

**21.**    On the evening of August 8, 2007, Plaintiff sent an email to Roger Kuula raising several issues regarding the final version of the 2007 Profit Sharing Plan. These issues included: (1) the apparent reduction in the amount of bonus he would receive; (2) the scope of the "no-competition clause"; (3) the "no-raiding of employees" clause; and (4) the "no-discussion" clause.

**22.**    After receiving Plaintiff's August 8, 2007 email, Kuula forwarded it to Borrego and Rodgers.

**23.**    On the evening of August 8, 2009, Plaintiff used a commercial computer program that is specifically designed to permanently eliminate previously existent data to wipe the contents of the hard drive in his employer issued and owned laptop computer. The parties dispute the purpose behind this action as set forth below.

**24.**    On August 9 and 10, 2007, Plaintiff had several closed-door meetings with his direct supervisor, individual Defendant Borrego, to discuss the Profit Sharing Plan. The parties dispute the content of the discussions at those meetings as set forth below.

**25.**    Plaintiff's employment ended at a meeting between Borrego and Plaintiff that occurred at the Sacramento International Airport on August 10, 2007. Plaintiff contends he was terminated. Defendants contend he resigned.

**26.**    Following his final meeting with Borrego on August 10, 2007, Plaintiff returned to APD's Sacramento office for a very brief period of time to pick up a few personal effects and say goodbye to his staff.

**27.**    Enochs heard Plaintiff tell his staff that he had been terminated from his position.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    2.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**28.** In response to this statement, Enochs, in the presence of these same staff members, told Plaintiff that he had been informed that Plaintiff had resigned his employment.

**29.** Plaintiff never signed the 2007 Profit Sharing Agreement.

**30.** In December of 2007 Alison Rodgers resigned her employment, mentioning Plaintiff in her resignation letter.

**31.** At all times during his employment, Plaintiff was an "at-will" employee.

**B.** **Disputed Factual Issues**

**1.** Was Donovan hired by American Property Development, Inc. and American Capital Homes, Inc. in January of 2004 or was he hired by American Property Development, Inc. Northern Cal, LLC ("APD NorCal"), in January of 2004?

**2.** Which entity American Property Development, Inc, American Capital Homes, Inc, or APD NorCal employed Plaintiff during the period spanning January 4, 2004 to August 10, 2007, either individually or jointly?

**3.** Defendants contend that during the time period relevant to this action, APD had three separate "divisions," APD NorCal, APD Northwest, and APD Southwest, each of which is a separate legal entity. Plaintiff contends that he was jointly employed by American Property Development, Inc. and American Capital Homes, Inc.

**4.** Defendants contend that each LLC, not Defendant American Property Development, Inc., employs the individuals working in the respective "division." Plaintiff contends that he was jointly employed by American Property Development, Inc. and American Capital Homes, Inc.

**5.** There is a factual dispute whether references in papers referring to "American Property Development- Northern California Division" which were distributed to Plaintiff during his employment refer to APD NorCal or American Property Development, Inc.

**6.** During the time Plaintiff was an employee, the operations of APD and each LLC was overseen by Kuula and APD Vice President Greg Borrego, who coordinated and directed the actions of the respective entities.

**7.** As part of his duties as Vice President of Acquisitions/Development, Donovan was responsible for locating developable parcels of land and acquiring them on behalf of American Capital Group related entities.

**8.** Defendants contend that American Property Development and its subsidiaries work to identify unimproved land for potential acquisition. Plaintiff contends that he did not work to acquire any property on behalf of APD NorCal.

**9.** Defendants contend that the only business of APD and its subsidiaries—such as APD NorCal, LLC—is locating parcels of land for potential acquisition and then developing those parcels once they have been acquired by an American Capital Group related entity.

**10.** Once APD or its subsidiaries have identified a target for acquisition, the various American Capital Group Companies work in a coordinated way to finance, acquire and develop that land.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011    3.    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**11.**    The parties dispute that in addition to building, developing, managing, and syndicating garden-style apartment complexes, on specific projects the Companies have also built, or planned to build, single family residences, condos, and /or commercial space.

**12.**    The 2004 Parcel Acquisition Bonus Plan states: "It is possible for an APDI-NORTHERN CA DIVISION Employee to earn bonuses for specific assigned projects. The Employee's immediate supervisor will advise the Employee at the time that a new project is assigned to him/her as to whether or not that specific project qualifies for a bonus. There may be conditions, economic or other, that will make Bonus payment impossible. Any Bonus to be paid is totally discretionary, based upon management decision, and this decision is final and binding." ... 3. If any additional parcels of multi-family land are under contract by December 31, 2004, a bonus of $20,000 per piece shall be earned."

**13.**    The parties dispute whether the other parcels which Plaintiff placed "under contract" in 2004 were subject to the Parcel Acquisition Bonus Plan.

**14.**    Defendants contend that Plaintiff received all bonuses payments which he was owed under the 2004 Parcel Acquisition Bonus. Plaintiff contends he is owed an additional $120,000.00 under the Parcel Acquisition Bonus Plan.

**15.**    Plaintiff contends Defendant Roger Kuula provided Plaintiff assurances regarding the amount of money he would earn through the 2004 Parcel Acquisition Bonus Plan, both before and after the final Plan document was executed on July 1, 2004. Defendants contend that no such assurances or representations were made other than those set forth in the written 2004 Parcel Acquisition Bonus Plan, and if any such representations were made, they are barred by the Parole Evidence Rule.

**16.**    In September of 2006, Plaintiff was given a retro-active raise in his annual base salary which raised his base compensation from $110,000.00 per annum to $120,000.00 per annum.

**17.**    On September 15, 2006, Borrego prepared a "change of status" form necessary to effectuate this raise, and provide Plaintiff with a lump sum payment to cover the retro-active period. Defendants contend that instead of stating that Plaintiff was to receive a retroactive payment of $8,000.00, Borrego mistakenly wrote that Plaintiff was to receive an $80,000.00 retroactive payment. Plaintiff contends that he was informed by Borrego that the additional $72,000.00 was paid to make up for the fact that Plaintiff would not be paid the amount of profit sharing bonus he had been promised.

**18.**    In October of 2006, Plaintiff received a payment in the gross amount of $80,000.00.

**19.**    Because he had been informed that his raise was going to be retroactive, at the time he received this deposit Plaintiff was expecting, in addition to a deposit representing his normal paycheck, a retroactive salary increase deposit in the amount of $8,000.00.

**20.**    Plaintiff contends that the additional $72,000.00 was intentionally paid and had been approved by Roger Kuula, Greg Borrego, and Alison Rodgers. Defendants contend that the payment of the additional $72,000.00 was a mistake that went uncaught until after payment had been made.

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                4.                Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

21. Defendants contend that they discovered the mistake when Thomas Gay, the Chief Financial Officer of all of the American Capital Group Companies was running year-end numbers for each of the companies. During the course of his review and audit, Gay discovered an anomalous payment in APD NorCal's records, which kept its books from balancing. Gay investigated the payment and discovered the "Change of Status" Borrego had executed in September. Upon doing so, Gay realized Borrego had made a significant mistake in processing the form, and had accidentally overpaid Plaintiff by approximately $72,000.00. Plaintiff contends that the additional $72,000.00 was intentionally paid and when he alerted the Companies about the additional amount he had been paid, he was informed that it had been intentionally paid to him to make up for a lower than expected profit sharing bonus.

22. Defendants contend that the $72,000.00 difference between the $8,000.00 Donovan was expecting and the $80,000.00 he received was the result of an interrelated series of mistakes. Plaintiff contends that the additional $72,000.00 was intentionally paid and had been approved by Roger Kuula, Greg Borrego, and Alison Rodgers.

23. Defendants contend that once it was discovered that Plaintiff had mistakenly been overpaid by $72,000.00 the Companies decided to let him keep the amount rather than requiring him to repay it. Plaintiff contends that it was only after the payment that Roger Kuula changed his mind and decided to seek repayment of a portion of the previously approved $72,000.00.

24. Defendants contend that the Companies came up with two successive methods for allowing Plaintiff to keep the $72,000.00 overpayment. Under the initial method, the Companies offered to treat the $72,000.00 overpayment as a prepaid bonus, which would be allocated over the years 2006 and 2007 (50% in 2006 and 50% in 2007). In order to balance their books, the Companies would treat these prepaid bonuses as guaranteed profit sharing for each of the years, with Plaintiff receiving no additional profit sharing monies in either year unless his profit sharing bonus for the year was more than the prepaid amount. Plaintiff disputes this characterization of the "prepaid bonus plan."

25. Defendants contend that subsequent to this first method being initiated, the Companies determined it was both cumbersome and unwieldy, and interfered with the purpose of the profit sharing plan, which was to incentivize employees such as Plaintiff. Accordingly, the Companies decided to adopt a second method of handling the overpayment. Under this second method, Plaintiff was given a raise in his annual salary from $120,000.00 per annum to $150,000.00 per annum. This raise was given to him to account for the overpayment. Thus, the $72,000.00 overpayment was treated as an advance on the raise from $120,000.00 to $150,000.00, and Plaintiff continued to be paid his pre-raise salary until the $72,000.00 advance was accounted for. Under this second method of accounting for the $72,000.00 overpayment, Plaintiff's "take home" salary remained the same as it had been when his annual compensation was $120,000.00 per year ($5,000.00 per pay period), the difference in each check ($1,250.00) being treated as an incremental offset for the advance. Once the advance was accounted for, Plaintiff was to receive checks without any offset, at the rate of $150,000.00 per year, or $6,250.00 per pay period. Had Donovan not resigned his employment, the Company's mistaken overpayment would have resulted in a tremendous windfall to him, because in addition to keeping an unearned $72,000.00, he would have received a full $150,000.00 annual salary once the prepayment was covered.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                          5.                          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**26.** Plaintiff contends that he protested that this second method did not make sense, as it would overstate his real income, and was likely to cause problems with his taxes. He also stated that he was not signing any documentation approving of the arrangement. He contends that nevertheless, the Companies implemented the second method over his protest.

**27.** The Companies began paying Plaintiff under this second method in May of 2007.

**28.** Defendants contend that Plaintiff resigned his employment on August 10, 2007, before the remaining portion of the $72,000.00 advance was offset.

**29.** Defendants contend that Plaintiff was never required to repay a single dollar of the $72,000.00. Plaintiff contends that Defendants' implementation of the second method amounted to an unlawful deduction being taken from his wages without his authorization or agreement.

**30.** Defendants contend that Plaintiff never repaid a single dollar of the $72,000.00. Plaintiff contends that Defendants' implementation of the second method amounted to an unlawful deduction being taken from his wages without his authorization or agreement, and that Defendants have previously agreed in 2006 that the entire $72,000.00 was intentionally paid as a bonus.

**31.** Defendants contend that an individual employee's participation in the Profit Sharing Plan is entirely voluntary and that an individual employee who chooses not to participate in the Profit Sharing Plan would suffer no adverse consequences other than foregoing any Profit Sharing Bonus to which they might have been eligible for that year. Plaintiff contends that participation in the Profit Sharing Plan was not voluntary (at least in his case) and employees eligible for the Plan were told that no bonus checks would be issued until everyone had signed and returned the plan documents. Plaintiff also contends that he was told that he had to execute the plan documents or he was fired.

**32.** Around May of 2007, APD began the process of reviewing and revising its annual Profit Sharing Plan. Plaintiff contends that Defendant Kuula decided to add a "no-competition" clause to the Plan documents, at least in part because in October 2006, a Vice President of American Home Builders (AHB) named Bill Schoenwald left the company and went to work for a competitor of ACG, Inland Construction. Plaintiff further contends that Kuula met with CFO Tom Gay and HR Director Alison Rodgers in early July 2007 and asked them to develop a form of non-compete agreement that all managers would have to sign as a condition of receiving their 2007 Profit Sharing Plan bonuses for the first half of the year. Plaintiff contends that in the course of that meeting, Rodgers told Kuula that she believed that such clauses were unlawful in California, Kuula responded that he did not care, and that if Plaintiff did not sign the document that Plaintiff would be fired. Plaintiff contends that Rodgers told Kuula that firing someone for not signing the document would be unlawful, and Kuula responded that he didn't care. Plaintiff further contends that Kuula also instructed Rodgers to start looking for replacements for any one who did not sign the plan documents containing the clause. Defendants contend that the "no-competition" clause was intended to keep employees from competing against the Companies while they were employed by an American Capital Group affiliated entity, and no bonuses had vested or accrued under the Plan until it was executed and finalized. Defendants also contend that Rodgers is a non-credible witness with a declared bias against Kuula, who has testified under oath that she would like to see him lose this case, and that she has manufactured evidence and provided false testimony in this action in an attempt to cause Defendants to lose this action.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                              6.                          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

33. Plaintiff contends that Alison Rodgers kept a personal journal in which she recorded the events at the meeting. Defendants contend that no such meeting occurred, that despite her contentions of possession, Rodgers was never able to produce the alleged notes, and both the notes and the testimony regarding their content are non-credible manufactured evidence.

34. Defendants contend that at the July managers meeting Donovan resigned his employment and had to be talked into remaining with APD NorCal by Jon Wood and Roger Kuula. Plaintiff denies that he resigned.

35. In response to the feedback provided by its employees, APD revised the draft 2007 Profit Sharing Agreement.

36. As revised, the 2007 Profit Sharing Agreement contained the non-competition clause included in the final version of the 2007 Profit Sharing Agreement which Donovan received on August 8, 2007.

37. All plan participants were told that "no bonus checks would be sent out until all employees had signed and returned the plan documents." Plaintiff contends this statement was made to pressure employees into signing the documents; Defendants contend it was to avoid the need for more than one payroll check run.

38. The parties dispute whether the non-competition clause included in the final version of the 2007 Profit Sharing Agreement is lawful in California.

39. Plaintiff contends that the "no-raiding," "no-discussion," and "bonus return" clauses are unlawful in California. Defendants contend that none of these clauses have a nexus to Plaintiff's claim for wrongful termination.

40. Plaintiff refused to sign the 2007 Profit Sharing Plan.

41. Defendants contend that Plaintiff was very concerned that the non-competition clause would bar his secret personal real estate project in Oakley, and he would not therefore sign an agreement containing such a clause. Plaintiff contends the agreement was unlawful and he was given no choice but to sign it or be fired.

42. Defendants contend participation in the 2007 Profit Sharing Plan was voluntary. Plaintiff contends that he was given no choice but to sign it or be fired.

43. Defendants contend that there is no nexus between the confidentiality and no-raiding clauses included in the final version of the 2007 Profit Sharing Agreement and Donovan's alleged termination for refusing to sign. He stated he was only concerned with the non-competition clause included in the 2007 Profit Sharing Agreement. Plaintiff contends he was concerned that all clauses were illegal and that Kuula refused to communicate with him until he signed the Agreement.

44. Defendants contend that Plaintiff had signed numerous other agreements during the course of his employment that contained clauses substantially identical to the "no-discussion" and "no-raiding" clauses; prior to receiving the 2007 Profit Sharing Plan Donovan had accepted these clauses, never complaining about them. Plaintiff denies this.

45. Defendants contend that in wiping the hard drive of his employer owned laptop, Plaintiff was attempting to destroy all of the evidence of his Oakley project and his

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011    7.    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

personal real estate ventures which was located on the laptop's hard drive. Plaintiff contends he wiped the hard drive because it was infected with a virus.

46.    Defendant contends that immediately prior to destroying and overwriting all of the information located on his employer issued and owned laptop computer, Plaintiff backed up files that he considered to be important to his Oakley Project to a personal thumb drive (AKA a "flash drive"). Plaintiff contends he backed up all data files contained on the laptop either on the thumb drive or onto CDs.

47.    Defendants contend Plaintiff did not back up all of the files located on his employer issued and owned laptop computer prior to destroying and overwriting all of the information located on its hard drive. Plaintiff claims he backed up and preserved all data on the entire hard drive.

48.    Plaintiff retained the thumb drive and its contents for his personal use, and did not return it to his employer.

49.    Defendants contend that but for Plaintiff destroying and overwriting all of the information located on the hard drive of his employer issued and owned laptop computer, there would be substantially more evidence of the hours when he was supposed to be working for APD that Plaintiff spent working on the development of his personal project in Oakley. Plaintiff denies that any evidence was destroyed as a consequence of his wiping the laptop hard drive, as all data files were backed up on the thumb drive which he kept or the CDs that were left at APD's Sacramento office.

50.    Defendants contend that but for Plaintiff destroying and overwriting the content of his APD owned hard-drive, there would be substantially more evidence of his Plan to resign his employment. Plaintiff denies that any evidence was destroyed as a consequence of his wiping the laptop hard drive, as all data files were backed up on the thumb drive which he kept or the CDs that were left at APD's Sacramento office.

51.    Defendants contend that but for Plaintiff destroying and overwriting the content of his APD owned hard-drive, there would be substantially more evidence of the fact that he was only concerned with the 2007 Profit Sharing Plan's non-competition clause. Plaintiff denies that any evidence was destroyed as a consequence of his wiping the laptop hard drive, as all data files were backed up on the thumb drive which he kept or the CDs that were left at APD's Sacramento office

52.    Prior to August 10, 2007, Plaintiff had been communicating with an attorney regarding the 2007 Profit Sharing Plan and the clauses contained therein.

53.    Defendants contend that upon learning that the Company was unwilling to drop the non-competition agreement from the final version of the Plan, Plaintiff resigned his position at APD. Plaintiff contends that execution of the documents was not voluntary and Defendant Kuula refused to discuss Plaintiff's concerns about the Agreement unless he signed it first, and Plaintiff was fired when he refused to sign the Agreement as ordered.

54.    Defendants contend that at no time during this process did Plaintiff inform the Company, Kuula or Borrego of the existence of his Oakley project. Plaintiff contends that in July 2007 he told Kuula about his purchase of the property in Oakley.

55.    Defendants contend that Matthew Enochs, an employee of ACH, who had been instructed to escort Plaintiff out of the building and change the locks, met Plaintiff at the APD NorCal offices and stayed with him during the time he was in the office.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

Plaintiff contends that Enochs was not with him the entire time he was speaking with his staff.

56.    Defendant contends that despite the fact that Enochs' statement directly contradicted the position he had just taken, Plaintiff did not respond to Enochs' statement, contradict it, or rebut it. Plaintiff disputes his reaction to Enoch's statement and the significance thereof.

57.    Defendants contend that for several months prior to his last day of employment, Plaintiff had been informing third parties who were involved in his Oakley project that he was "once again ready to strike out on his own." Plaintiff denies this.

58.    Defendants contend that during the months proceeding his last day at APD, Plaintiff had formed his own private development company and was regularly spending hours he was supposed to be working for APD working on and attending meetings necessary to facilitate the development of his personal project in Oakley. Plaintiff denies that he spent more than *de minimis* amount of time working on matters related to the Oakley property during working hours, and also contends that his activities related to the Oakley property did not take any significant portion of his time. Plaintiff further contends that his actions were in compliance with the Defendants' policies at the time, which permitted use of office telephones, computers and internet for personal use, provided such use was kept to reasonably minimal levels. Plaintiff further contends that other employees, including the individual defendants engaged in such personal use of company equipment, and/or directed American Capital Group employees to devote their work time to the personal business of defendants.

59.    Defendants contend that Plaintiff cleaned out his office prior to his final meeting with Borrego on August 10, 2009. Plaintiff denies this.

60.    Defendants contend they fully performed under the 2007 Profit Sharing Agreement. Plaintiff contends that until his termination on August 10,2007, he fully performed his job responsibilities and was qualified to participate in the 2007 Profit Sharing Plan, and would have enjoyed the benefits of that Plan but for Defendants' insistence that he sign the unlawful agreements as a condition of participation, and terminated him when he refused.

61.    Following Plaintiff's resignation the company investigated Plaintiff's conduct and why he had refused to sign the 2007 Profit Sharing Agreement. As part of this investigation, Defendants contend that they inquired into Plaintiff's past activities, whether he had been competing with the companies, was engaged in improper "side deals," or was engaged in other similarly inappropriate activity. Plaintiff disputes that the Company engaged in any legitimate investigation. Plaintiff contends the Companies' "investigation" was motivated by a desire to damage Plaintiff's reputation, and an attempt to gain after acquired evidence to support their defense.

62.    As part of their investigation, Defendants contend that they questioned other company employees as to Plaintiff's activities while employed and potential improprieties, such as whether Plaintiff had been competing against the companies, was involved in "side deals," or had taken money from American Capital Group related projects. Plaintiff contends that the defamatory remarks were made by Kuula and Borrego as assertions of fact, and not as inquiries into possible wrongdoing.

63.    Defendant contends that Plaintiff has failed to mitigate his alleged damages by seeking additional outside employment. Plaintiff denies this, and contends that he has

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    9.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

been unable to locate suitable replacement position that would represent a reasonable effort to mitigate his damages.

64. Defendant contends that Plaintiff has been working for himself and his Partners on the Oakley Project since his last day of employment with APD NorCal. Plaintiff contends that he has been seeking replacement income in any way he can, whether through seeking replacement employment or seeking other opportunities to create income.

65. The parties dispute whether the following statements were made by Kuula or Borrego: (1) whether Borrego told Enochs that the company had hired a private investigator to investigate Donovan a couple of months ago, and that Donovan had been doing "side deals" with "Inland," a competitor of APD: (2) whether Borrego told APD employee Levi Singleton that Donovan had improperly "taken money" from a third party for the sale of homes located on property that APD had acquired in Turlock, California; (3) whether Borrego told APD employee Mat Eland that Donovan had been doing improper "deals" with "Inland" while still employed by APD; (4) whether both Kuula and Borrego told Eland and Singleton that Donovan had been engaged in doing improper "side deals" for his own benefit while employed at APD; and: (5) whether Borrego told Eland that Donovan "must be living above his means."Plaintiff contends Borrego has made additional defamatory statements of the same nature. Plaintiff contends that none of the statements were true when published, and that Defendants Kuula and Borrego knew that the statements were false, and made the statements to damage Plaintiff's reputation, and with malice. Defendants deny this.

66. The parties dispute the nature and extent of Plaintiff's non-economic (i.e., emotional distress) damages.

67. The extent to which Plaintiff has suffered economic damages, and the proper measure of those damages.

68. Whether Defendants have acted with malice, fraud and/or oppression so as to justify an award of punitive damages against one or more Defendants.

69. Defendants contend that the closure of the APD Sacramento office in December 2008 serves to cut off Plaintiff's wage loss damages; Plaintiff contends that the closing of the Sacramento office was not because of business realities but a tactical move by Defendants to attempt to limit any damages award, and in any event the impact on Plaintiff's wage loss is purely speculative since it is not known what the decision would have been had Plaintiff not been terminated and continued to manage the office.

70. Defendants contend that Plaintiff's conduct regarding his Oakley Project constitutes unclean hands and/or after acquired evidence sufficient to estop or otherwise prevent Plaintiff from recovering under any of his claims. Defendants also contend that such conduct constitutes grounds for rescission, waiver, or revocation of any contracts which Plaintiff claims were breached.

71. All Defendants have submitted statements concerning their financial condition for the purpose of establishing their net worth.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    10.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**DEFENDANTS' FACTUAL CONTENTIONS REGARDING PLAINTIFF'S ACTIVITIES IN OAKLEY, CA AND HIS OAKLEY PROJECT**

**72.**  In early 2007, Plaintiff located a piece of property in Oakley, California which he determined would be profitable to acquire and develop.

**73.**  At the time, Oakley, and the neighboring cities of Brentwood and Antioch, were some of the fastest growing cities in the country, and all were in need of multi-family development (i.e. apartments, townhouses, and condominiums), which is among the types of development in which the American Capital Group excels

**74.**  The demographics in Oakley and the surrounding areas were such that in the 6 months before Plaintiff located his Oakley parcel, APD was actively searching the area for potential pieces of property to acquire and develop.

**75.**  In fact, prior to identifying the Oakley property for acquisition by himself and his partners, Plaintiff found a piece of property which was located less than ¼ mile away as a potential target for acquisition by American Capital Group affiliated companies.

**76.**  Despite this, after locating his Oakley property as a parcel that could be profitably developed, Plaintiff never informed anyone at any American Capital Group company that he had located the property.

**77.**  Nor did he present it to any American Capital Group company for potential acquisition.

**78.**  In doing so, Plaintiff gave preference to himself over his employer in disregard of his duty of loyalty.

**79.**  Mathew Eland—one of the APD NorCal, LLC employees who reported directly to Plaintiff—actually located the Oakley parcel for Plaintiff during normal working hours while employed by APD NorCal, LLC.

**80.**  Eland personally located the Oakley parcel which Plaintiff acquired for himself and his business partners.

**81.**  Eland located the Oakley parcel using the resources of APD NorCal.

**82.**  In addition to violating his own duty of loyalty, Plaintiff improperly utilized the services of another APD employee, as well as other Company resources, when he usurped the business opportunity presented by the Oakley property.

**83.**  Both Plaintiff and Eland knew what they were doing was wrong, and took calculated steps to conceal their activities from their superiors.

**84.**  After Plaintiff acquired the Oakley property for himself and his partners, both he and Eland spent a substantial amount of time working on his personal project when they were supposed to be working for APD and were being paid by it.

**85.**  The Defendants discovered the existence of Plaintiff's Oakley property, as well as his an Eland's involvement in it, in discovery in this action.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    11.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

86.  Had Defendants known of Plaintiff's conduct and activities re the Oakley Parcel while he was employed, they would have terminated him for cause.

**PLAINTIFF'S FACTUAL CONTENTIONS REGARDING PLAINTIFF'S ACTIVITIES IN OAKLEY, CA AND HIS OAKLEY PROJECT**

87.  At the time of his hire, Plaintiff disclosed to the Defendants that he and some partners owned a parcel of land located in the Natomas area in Sacramento County. He also disclosed that they had obtained approval of a subdivision map, and planned to sell a portion of the property to a homebuilder. Plaintiff subsequently disclosed that a portion of the property had been sold.

88.  A local flood control agency (Sacramento Area Flood Control Agency, or "SAFCA") determined that the remaining portion of the Garden Highway property was needed for flood control purposes, and as such, it could not be developed as previously planned. The agency ultimately purchased the land as a negotiated inverse condemnation, with payment for the sale paid to Plaintiff and his partners in 2007.

89.  Plaintiff and his partners used some of the proceeds of this sale to acquire property in Oakley, California, in an IRC 1033 exchange.

90.  The only "development" that Plaintiff and his partners ever did in relation the Oakley property (and their previously owned properties) was to obtain entitlements to develop the property and selling the property off to a third party that would actually develop the property by creating construction drawings, pulling permits and building the project. Plaintiff thus would create value in his properties by hiring an engineering firm and architect to develop project concepts, and spent little of his personal time in the process (other than writing checks to the engineers and architects).

91.  Plaintiff never sought to develop apartment buildings, which is the core business (indeed, the only business) engaged in by APD. Consequently, Plaintiff never "stole" business opportunities from APD. The entitlements associated with Plaintiff's personal properties were ones that the Company has never pursued. The Natomas property was zoned for single family residential, a type of development that the Company has *never* pursued. Similarly, the Oakley property was acquired with the intent of obtaining entitlements for mixed use commercial and single family residences; again, a type of development that the Company has never done.

92.  Kuula has never seen or evaluated the Oakley property for its development potential, and has no opinion as to whether it would have been a suitable property for the Company to develop.

93.  The Defendants have never developed any single family residences, retail strip centers, or commercial office space. Although Defendants contend that APD had a single-family residence project in Turlock, no residences had actually been built. Moreover, on October 29, 2007, APD submitted a letter to the Turlock Mayor and City Council stating that the Company had no intent to build single family residences on the Turlock land, and urged the Mayor and City Council to retain the "High Density Residential / Office" zoning for the property

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

12.

Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

94.     Kuula and his two children (Brooke and Benjamin Kuula) have freely used Company time, employees, and resources for their personal objectives, and usurped Company opportunities.  For example:

a.     APD had acquired a property in West Sacramento for development, then Kuula assigned the title to the property to Arizona Cowboys LLC, a personal investment of Kuula and his two children.

b.     Kuula and his daughter have both used Company employees to help design and/or improve their personal residences.

c.     Kuula instructed Donovan, Eland, and former employee Kenneth Koss to use their work time to identify properties to add to his personal investment portfolio.

d.     Kuula instructed AHB construction managers to exclusively use a company owned by his son Benjamin as the subcontractor to install security systems on projects.

e.     Kuula and his partner Jon Wood utilized a "straw man" entity to stage a mock deed in lieu of foreclosure transaction and wipe out the interests of third party investors in an apartment project called "Teton Apartments" that Kuula and Wood were managing for an ACG investment fund.  This included a "capital call" to investors.  The investors lost their entire investment and had their tax credits recaptured by the IRS; Kuula and Wood eventually transferred title to the property from the straw man to themselves personally.  Despite this, ACG continues to advertise that there have never been any capital calls to investors in the history of ACG, and no investors have ever lost money.  In addition, ACG advertises that the Teton Apartment project rewarded investors with a 36.9% internal rate of return on their investment.

f.     Kuula and Wood also manage Monticello at Southport Associates LLC, the entity that controls an apartment house in which investors have been sold undivided interests.  None of the these property interests have been recorded, contrary to the agreements signed by the company and investors, and without the investors' knowledge..

95.     Whether Plaintiff's activities with respect to the Oakley property would have resulted in his discharge as a matter of settled corporate policy.

## III.
## DISPUTED LEGAL ISSUES

### A.     Disputed Evidentiary Issues

1.     Defendants anticipate that Plaintiff will attempt to introduce evidence in form of deposition or live testimony from Ms. Alison Rodgers (AKA Alison Smith), as well as potential exhibits used at Ms. Rodgers deposition and attached as exhibits to the transcript thereof.

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    13.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    Defendants will be filing a Motion in Limine to exclude all of Ms. Rodgers' testimony, as well as all

2    exhibits used at her deposition.

3        **2.**    Defendants anticipate that Plaintiff will attempt to introduce evidence regarding an

4    American Capital Group Development known as "Teton Apartments."  Though a Motion in Limine,

5    Defendants will seek to exclude all testimony and evidence concerning "Teton Apartments," as the

6    transactions in question did not involve Plaintiff, occurred years before Plaintiff's employment, are

7    wholly irrelevant to the matters in dispute here, and are more prejudicial than probative

8        **3.**    Defendants anticipate that Plaintiff will attempt to introduce hearsay evidence

9    concerning the character of individual Defendants Kuula and Borrego.  Through a Motion in Limine,

10    Defendants will seek to exclude all such evidence on the ground it is improper and more prejudicial

11    than probative.

12        **4.**    Plaintiff anticipates a dispute regarding the evidence regarding Plaintiff's outside

13    investment in property in Oakley, CA:  In 2007, Plaintiff and his partners sold some investment

14    property in Sacramento County and rolled the proceeds over into a parcel of agricultural land in

15    Oakley, California.  Plaintiff and his partners then submitted an application to rezone the land to the

16    City of Oakley about two months before his employment ended.  Defendants are asserting an "after-

17    acquired evidence" defense, contending that Plaintiff engaged in activities related to Oakley property

18    usurped opportunities that should have been offered to his employer, American Property

19    Development, Inc, and used company property and time to further those activities, and that Plaintiff

20    would have been terminated from his employment if his employer had known about the activities

21    while he was employed.   During discovery Defendants served approximately 10 deposition

22    subpoenas for documents on various third parties (such as Plaintiff's partners, the City of Oakley,

23    engineering and architecture firms) seeking documents related to the Oakley property, and deposed

24    five third party witnesses on the same subject matter.  Plaintiff disputes the relevance of much of this

25    evidence under FRE 402 (as it relates to Plaintiff's activities *after* his employment ended).  Also, the

26    facts of Plaintiff's activities related to the Oakley property are largely undisputed, and therefore

27    much of the proposed evidence should be excluded under FRE 403 on grounds that it is cumulative,

28    a waste of time, and confuse the issues.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                14.                Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**5.**    Plaintiff anticipates a dispute with respect to evidence gathered by Defendant after the discovery cutoff in the Washington state case *American Property Development, Inc. v. James Donovan*:  In December 2008, Defendant APD and other American Capital Group-related entities filed lawsuit against Plaintiff, alleging the Plaintiff's activities related to the Oakley property constituted a breach of his employment contract, a breach of his fiduciary duties, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, unjust enrichment and conversion.  Plaintiff's position is that the lawsuit is frivolous, the Washington court has no personal jurisdiction over him, and the lawsuit should be dismissed on grounds that the claims should have been brought as compulsory counter-claims in the present action.  APD noticed Plaintiff's deposition in that case after the discovery cutoff in the present case, and has expressly stated in filings with the Washington state court that: (1) the *APD v. Donovan* lawsuit was brought because the claims being asserted would not have been permitted this Court at this late date, and (2) one of APD's purposes for taking Plaintiff's deposition in the Washington state action was to gather evidence for use in the present case.  So far one day of Plaintiff's deposition has been taken in *APD v. Donovan*, and APD's attorneys have indicated they want to schedule another day of Plaintiff's deposition and the deposition of Defendant Greg Borrego by the end of July 2009.  Plaintiff opposes the use of any evidence gathered in the *APD v. Donovan* discovery proceedings in the present case, on the grounds that the lawsuit and related discovery proceedings are an attempt by Defendants to do an "end run" around this Court's pretrial scheduling orders, under which all discovery was to have been completed in this case by March 18, 2009

## Special Factual Information in Certain Actions

A.    Plaintiff's Contract Claims:

1.    The Parcel Acquisition Bonus Plan:

Terms of the Contract:

Plaintiff and APD entered into a written Bonus Plan on January 8, 2004, whereby, in addition to Plaintiff's salary, Plaintiff would be paid $20,000 if the building permit for a property located in Modesto was "ready for use by July 2004," and an additional $20,000 if Plaintiff arranged for "one piece of multi family apartment building site land in Northern CA approved for purchase by

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          15.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1   Company President by October 2004." All bonuses were to be "paid within 30 days after the Date

2   Earned."

3       On or about July 1, 2004, the parties to the Parcel Acquisition Bonus Plan agreed to amend

4   the Plan, so that Plaintiff would be paid bonuses as follows: (a) Plaintiff would earn $20,000 if the

5   building permits on a project located in Modesto were "pulled" by July 15, 2004; (b) Plaintiff would

6   earn an additional $20,000 if APD had "one (1) land contract by December 31, 2004"; and (c)

7   Plaintiff would earn an additional $20,000 per parcel for "[i]f any additional parcels of multi-family

8   land are under contract by December 31, 2004"  (the "Amended Parcel Bonus Plan").  All bonuses

9   were to be "paid within 30 days after the Date Earned."

10      Both the original and amended Bonus Plan stated the following:  "It is possible for an APDI-

11  NORTHERN CA DIVISION Employee to earn bonuses for specific assigned projects.  The

12  Employee's immediate supervisor will advise the Employee at the time that a new project is

13  assigned to him/her as to whether or not that specific project qualifies for a bonus.  There may be

14  conditions, economic or other, that will make Bonus payment impossible.  Any Bonus to be paid is

15  totally discretionary, based upon management decision, and this decision is final and binding."

16      In addition, Kuula told Plaintiff both before and after execution of the documents that the

17  Bonus Program was going to "make you rich," and Kuula looked forward to writing Plaintiff "bug

18  checks."

19      Breach of the Contract:

20      Plaintiff contends that he arranged to put eight parcels of multi-family land under contract by

21  the December 31, 2004, deadline.  Each of these parcels were subject to the plan, yet Plaintiff was

22  paid $40,000, or $120,000 less than agreed.  Plaintiff was told by supervisor Borrego that Kuula had

23  changed his mind and decided to treat three parcels as one for purposes of the Bonus, and wanted to

24  pay the bonus on the remaining parcels only after they closed escrow.  After those properties closed

25  escrow, Plaintiff asked for payment of the bonus, and was told by Borrego that Kuula was not going

26  to pay any more bonuses.  When Plaintiff protested, but Borrego advised him not to pursue the

27  claim.  Plaintiff contends that the contract was breached because APD President Kuula failed to pay

28  the bonus for parcels that clearly qualified for payment under the Bonus Plan, and that Kuula's

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          16.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    denial of the bonus payment after Plaintiff had performed was in bad faith, and not objectively

2    reasonable.  Plaintiff further contends that APD is estopped by Kuula representations from denying

3    that the bonus was earned.

4        Damages:

5        Plaintiff seeks damages for breach of the contract in the amount of $120,000.00.

6    2.    The Profit Sharing Plan Bonus:

7        Terms of the Contract:

8        Plaintiff had previously participated in the American Capital Group Profit Sharing Plan,

9    whereby plan participants would receive a bonus based upon the pooled profits of various divisions

10   of the ACG group of companies and the individual participants' specified percentage of these profit

11   pools.

12       During the 2006 – 2007 time frame Plaintiff received numerous assurances regarding the

13   amount of the bonus that he could expect from the 2007 Plan.  This included supervisor Borrego's

14   assurance that he would be receiving a six-figure bonus, representations made during a manager's

15   meeting that the bonuses in 2007 could be as much as three times the amount of the 2006 bonuses,

16   and Kuula's assurance that the bonuses would be "good."  In addition, in a memorandum dated

17   January 23, 2007, Plaintiff was "guaranteed" a minimum of $32,000.00 in profit sharing plan bonus.

18   Based upon these representations Plaintiff performed all conditions necessary for him to participate

19   in the 2007 Profit Sharing Plan.

20       Breach of the Contract:

21       The first payments of the 2007 Profit Sharing Plan bonuses were to be made in July 2007.

22   However, Kuula caused to be inserted into the Plan Documents various unlawful clauses, including a

23   No Raiding of Employees Clause, a No Discussion Clause, and a No Competition Clause.  Plan

24   participants were told that they had to sign the documents before they could receive a bonus.

25   Plaintiff protested the unlawful clauses, and was terminated when he refused to sign the plan

26   documents for this supposedly "voluntary" plan.  Plaintiff seeks relief based upon breach of an oral

27   agreement, breach of the covenant of good faith and fair dealing, and a common count for work and

28   labor performed.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          17.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    Damages:

2    In deposition, CFO Tom Gay estimated that Plaintiff would have earned approximately

3    $80,000.00 in Profit Sharing Plan Bonus for 2007.  Defendants have also produced an accounting for

4    the Profit Sharing Plan that indicates that Plaintiff would have been paid $41,783.75.

5    **B.    Relief Sought**

6    Plaintiff seeks the following relief:  (1) compensatory and consequential damages for the

7    breach of contract and/or breaches of the covenant of good faith and fair dealing and/or the

8    reasonable value of the services rendered; (2) prejudgment interest under California Labor Code

9    section 218.6; (3) attorneys' fees and costs pursuant to California Labor Code section 218.5; (4)

10   general, special and punitive damages for Defendants' wrongful termination of Plaintiff in violation

11   of public policy and defamation; (5) "waiting time penalties" under Labor Code section 203; (6) the

12   return of all wages unlawfully deducted; and (6) injunctive relief to remedy violations of California

13   Business & Professions Code section 17200, and attorneys' fees and costs

14   Defendants seek judgment in their favor on all of Plaintiff's Causes of Action.

15   **C.    Points of Law**

16   **Plaintiff:**

17   **1.    Plaintiff Was a Joint Employee of APD and ACH**

18   In an apparent attempt to deflect liability away from APD and ACH, Defendants contend that

19   Plaintiff was the employee of American Property Development of Northern California, LLC.  This

20   contention is demonstrably false, for a number of reasons.

21   Under the common law, the "right to control" is determinate as to an employment

22   relationship.  *Empire Star Mines Co., Ltd. v. California Employment Commission* (1946) 28 Cal.2d

23   33; *see also S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations* (1989) 48 Cal.3d 341.  Under

24   the right to control test, "the principle test of an employment relationship is whether the person to

25   whom service is rendered has the right to control the manner and means of accomplishing the result

26   desired."  *Id.* at 43; *see also* Cal. Code Regs. tit. 22, § 4304-1 (listing factors to determine status as

27   an "employee" for purposes of unemployment insurance benefits, with the right to control as the

28   principle factor).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011            18.            Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

There can be no dispute that APD was Plaintiff's employer, as APD's senior management regularly exercised control over the manner and means by which Plaintiff performed his work. Plaintiff's job description identified him as an employee of APD. Plaintiff was supervised by APD President Kuula and APD Vice President Borrego, both of whom are officers, directors, and/or managing agents of APD. Borrego spoke with Plaintiff about his work on a daily basis. Plaintiff's performance reviews were written, in part, by Borrego, and Plaintiff met with Kuula and Borrego on a quarterly basis to review his performance and set goals.

APD also controlled Plaintiff's wages, hours and working conditions. Plaintiff negotiated his initial compensation package with President Kuula, as well as every subsequent raise in his salary. Kuula also personally approved all bonuses paid to Plaintiff. Plaintiff's initial offer letter was from APD. Plaintiff's written bonus plans and correspondence related to those plans identified him as an employee of APD. APD provided Plaintiff with the tools and equipment that he needed to perform his work, such as a laptop computer.

In sum, the undisputed facts show that APD controlled the manner and means by which Plaintiff accomplished his work, and thus was Plaintiff's employer from January 4, 2004, until his employment terminated on August 10, 2007.

It is also undisputed that Defendant ACH provides administrative, legal, personnel, and payroll services for all ACG-related companies. For example, it was ACH that issued Plaintiff's paychecks, administered Plaintiff's payroll and benefits, and kept his personnel file. Admitted joint employees of APD and ACH, CFO Tom Gay and HR Director Alison Rodgers, calculated Plaintiff's bonuses, and were instrumental in the drafting of the 2007 American Capital Group Amended Profit Sharing Plan documents that are at the heart of the dispute. *See, e.g., Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748 (9th Cir. 1979) (joint employment relationship of farmworkers found to exist between the farm that directed their work, and the entity that licensed farm to grow strawberries); *Cervantez v. Celestica Corporation,* __ F.Supp.2d __, 2009 WL 1482228 (C.D.Cal 2009) (joint employment by temporary services agency that processed applications and administered payroll, and company that controlled employees assigned to it by agency).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

**2.      Plaintiff's Wage-Related Claims**

**a.      Plaintiff Is Owed $120,000.00 for the Unpaid Parcel Acquisition Bonus**

Under an agreement dated July 1, 2004, Kuula agreed that for "any additional parcels of multi-family land are under contract by December 31, 2004, a bonus of $20,000 per piece will be earned" by Plaintiff. Plaintiff put eight separate parcels of land under contract during 2004. Plaintiff was only paid for two of these properties, and is owed $120,000.00 for the remaining six properties. "When, as here, a contract provides that the satisfaction of one of the parties is a condition precedent to that party's performance, two different tests are recognized: (1) the party may make a purely subjective decision but it must be made in good faith; or (2) the party must make the decision in accordance with an objective standard of reasonableness." *Storek & Storek Inc. v. Citicorp Real Estate Inc.* (2002) 100 Cal.App.4th 44, 58-59.

**b.      The Defendant Employers' Unlawful Deductions from Plaintiff's Pay**

Some time after approving the $80,000 payment to Plaintiff in October 2006 (which consisted of a $8,000 retroactive pay increase and a $72,000 bonus), Defendant Kuula changed his mind and wanted to allocate some of the bonus to Plaintiff's compensation in 2006, and some of the bonus to Plaintiff's 2007 compensation. This was initially accomplished by offsetting $32,000 of the bonus against $32,000 that Plaintiff had been guaranteed under the 2007 Profit Sharing Plan. Later, the plan was changed and the Kuula decided to recoup $30,000 of the bonus by giving Plaintiff a $30,000 increase in his base salary, effective January 1, 2007, while simultaneously deducting an amount equal to the increase in base salary. A total of $24,423.04 was deducted from Plaintiff's wages without Plaintiff's authorization, written or otherwise.

The Defendant Employer's actions violate California Labor Code section 221[1] because the end result of the company's actions was to pay Plaintiff $24,432.04 with one hand, and take back the same amount with the other hand and effectively reduce Plaintiff's wages below his stated salary. The Defendant Employer thus "collected or received" from Plaintiff "part of the wages theretofore received" by Plaintiff, and violated Section 221. *See, e.g, California State Employees Assn. v. State*

---

[1] Labor Code section 221 provides "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    20.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1  *of California* (1988) 198 Cal.App.3d 374, 377 (employer violated Section 221 by attempting to

2  collect alleged overpayments to employees through payroll deductions); *Hudgins v. Neiman Marcus*

3  *Group, Inc.* (1995) 34 Cal.App.4th 1109, 1112 (employers not entitled to setoff of debts owed by

4  employees against wages due to employees upon termination); *see also* Division of Labor Standards

5  Enforcement Opinion Letter 1999.09.22-1 ("if an employer deducts any portion of an employee's

6  paycheck because the employer previously overpaid the employee, [the] DLSE would view the

7  deduction as unlawful").  The Company's actions also violate California Labor Code section 224[2],

8  as it is undisputed that the deductions were made without written authorization from Plaintiff.

9  Sections 221 and 224 set forth the fundamental and substantial public policy of protecting

10  employee's wages.  *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 574.

11  ### c.    Failure to Pay 2007 Profit Sharing Bonus

12  Plaintiff received numerous assurances from Kuula that the profit sharing bonus for 2007

13  would be "good."  However, after Plaintiff had performed work in anticipation of the bonus for over

14  half a year, Kuula conditioned payment of the bonus on Plaintiff's execution of the new profit

15  sharing plan documents, which contained numerous illegal provisions.  This unpaid bonus may be

16  recovered by Plaintiff under any one of three theories – breach of oral contract, breach of the

17  covenant of good faith and fair dealing, and/or the common count for work and labor performed.

18  *See, e.g., Sabatini v. Hensley* (1958) 161 Cal.App.2d 172, 175-176 (where parties agreed that at-will

19  employee would receive unspecified amount of compensation in addition to salary, and employee

20  continued providing services thereafter, employee was entitled to recover under a common count for

21  work and labor performed, and the amount of the bonus would be the reasonable value of his

22  services over and above the agreed salary); *Division of Labor Standards Enforcement v. Transpacific*

23  *Transportation Company* (1979) 88 Cal.App.3d 823, 829 (where employer induced employees to

24

25  [2] Labor Code section 224 sets out deductions which an employer may lawfully make from an employee's pay.  These
26  deductions include (1) amounts the employer is empowered or required to withhold by state or federal law, (2) amounts
the employer is authorized, by a collective bargaining or wage agreement, to withhold for health and welfare or pension
27  plan contributions, and (3) amounts which are "expressly authorized in writing by the employee to cover insurance
premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage
28  arrived at by collective bargaining or pursuant to wage agreements or statute."  None of these categories apply to the
deduction that was made from Plaintiff's paycheck.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          21.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1  believe that bonus would be paid, and employees remained at employer in reliance on the

2  representations, employer was estopped by its conduct from denying payment of bonus).

3        **d.**     **Plaintiff Is Owed Waiting Time Penalties under Labor Code § 203**

4        Because the Defendant Employers' failed to pay Plaintiff all wages due at the time of his

5  termination (as a result of failing to pay bonuses and the improper collection of wages), Defendant

6  Employers failed to pay Plaintiff the wages due him in violation of Labor Code section 201 (wages

7  due must be paid immediately upon termination) and under Labor Code section 203 Plaintiff is owed

8  27 days of "waiting time penalties" based upon his $150,000.00 annual base salary at the time of

9  termination.  The total penalties are $15,577.92.[3]

10      **3.**     **Wrongful Termination in Violation of Public Policy**

11        Plaintiff was terminated by Defendant Employers because he refused to sign a supposedly

12  "voluntary" profit sharing plan document that contained several provisions that violate California

13  law.  These provisions included the following:

14        •   A clause that forbids employees who participated in the plan from talking with other

15            employees about the compensation they were to receive under the plan.  Under

16            California Labor Code section 232, "[n]o employer may" . . . [r]equire an employee

17            to sign a waiver or other document that purports to deny the employee the right to

18            disclose the amount of his or her wages."  See, e.g., *Grant-Burton v. Covenant Care,*

19            *Inc.* (2002) 99 Cal.App.4[th] 1361, 1376-77 (employee had fundamental right rooted in

20            public policy to join in a discussion with other employees about whether she was

21            being equitably compensated, and thus the employer cold not discharge employee for

22            discussing subject of employer's bonuses with coworkers.

23        •   A "No Raiding of Employees" clause that forbids employees participating in the

24            profit sharing plan from soliciting current and former employees of Defendant

25            Employer for employment elsewhere, and forbids plan participants from soliciting

26

27  [3] Labor Code section 203 provides that when an employer willfully fails to pay wages of an employee who is discharged

28  or who quits, the daily wages of the employee continue to accrue as a penalty until the wages are paid or an action is commenced, for up to a maximum of thirty (30) days of penalties.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          22.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    employment from, or interviewing with any former employees.  Such a broad ban on

2    solicitation on current and former employees violates California Business and

3    Professions Code section 16600, which states that "[e]xcept as provided by this

4    chapter, every contract by which anyone is restrained from engaging in a lawful

5    profession, trade, or business of any kind is to that extent void."[4].  *See, e.g., VL*

6    *Systems, Inc. v. Unisen, Inc.* (2007) 152 Cal.App.4th 708, 718 (broad no-hire

7    provision of contract between consulting company and client, under which client

8    could not hire any of the consulting company's employees for 12 months after the

9    contract terminated was void under Section 16600; policy applied to all employees,

10   regarding of whether they worked for the client or were even employed at the time of

11   the contract, and the provision was not necessary to protect consulting company's

12   interests); *Latona v. Aetna U.S. Healthcare Inc.*, *supra,* 82 F.Supp.2d at 1095-96

13   (clause restricting healthcare insurer employee from soliciting employees, customers,

14   or providers whose identities were not trade secrets was void under Section 16600);

15   *see also Cap Gemini America, Inc.*, (1992) 597 N.E.2d 1272, 1287 (under California

16   law, non-solicitation clause in employment contract was invalid as unreasonable

17   restriction on business where employer attempted to prevent former employee from

18   hiring employer's other employees regardless of their location and former employee

19   had primarily worked in California).

20   • A "No Competition Clause" that is overly broad as it not only forbids employees

21   from engaging in the type of development that was the business of the Defendant

22   Employers (*i.e.* class A garden style apartment complexes), but essentially forbids

23   employees from engaging in any real estate investment-related activity at all, even if

24   it is for their own personal investments on their own time, and the employee does not

25   use any of the Defendant Employer's trade secrets or confidential information.  The

26   No Competition Clause therefore violates Business & Professions Code section

27

28   [4] None of the exceptions to Section 16600 are applicable here.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                23.                Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    16600.

2    • A clause that requires that any employee/plan participant who violates any of the

3    above clauses at any time before December 31, 2008, must return all profit sharing

4    bonuses paid violates California law and public policy, as it would require the

5    employee to return wages paid as a penalty for violating an clause in the plan

6    documents that is in itself unlawful.

7    To establish a wrongful termination in violation of public policy, Plaintiff must prove that:

8    (1) he was an employee of Defendants APD/ACH; (2) he was terminated; (3) Plaintiff's refusal to

9    sign the plan documents was a motivating reason for his termination; and (4) Plaintiff was damaged

10   as a result.  CACI 2340; *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172; *D'sa v.*

11   *Playhut, Inc.* (2001) 85 Cal.App.4th 927 (employer violated public policy when it fired employee

12   based on his refusal to sign a confidentiality agreement that contained an illegal covenant not to

13   compete).  Plaintiff's termination violated a number of public policies embodied in the applicable

14   statutes, including:  (1) Business & Professions Code section 16600; (2) California Labor Code

15   section 432.5 (making it unlawful for an employer to require an employee to agree in writing to

16   terms that the employer knows to be unenforceable); (3) California Labor Code sections 96(k) and

17   98.6, which protect employees from discrimination and discharge for the exercising their rights

18   under the Labor Code, including their right to engage in lawful conduct occurring during

19   nonworking hours away from their employer's premises; (4) California Labor Code sections 232 and

20   923, which protect an employee's fundamental right rooted in public policy to join in a discussion

21   with other employees about compensation; and (5) California Labor Code section 1102.5, which

22   provides, *inter alia*, that an employer may not terminate an employee for bringing violations of

23   statute and public policy to the attention of the employer, or attempting to persuade an employer

24   from continuing to violate the law or a fundamental social policy.

25       **4.     The Defendant Employers' Conduct Is A Violation of Bus. & Prof. Code § 17200**

26   The Defendant Employers have continued to utilize the unlawful No Discussion Clause and

27   No Raiding of Employees clauses in its 2008 compensation documents, and has continued to insist

28   that California employees execute these documents as a condition of receiving bonuses.  Because of

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011     24.     Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1  this, Plaintiff will seek a ruling from the Court that the 2007 Profit Sharing Plan and any subsequent

2  Plan violate California law.  *See, e.g., Application Group, Inc. v. Hunter Group, Inc.* (1998) 61

3  Cal.App.4[th] 881 (nonresident business held to have violated Sections 16600 and 17200 by including

4  covenant not to compete in employment agreements with residents of the state of California).

   **5.    Defamation**

6  Defendants Borrego and Kuula made the following statements to them following Donovan's

7  termination:

- That Donovan had improperly "taken money" from a third party for the sale of homes
  located on property that APD had acquired in Turlock, California;

- That Donovan had been doing improper "deals" with "Inland," a competitor of APD,
  while still employed by APD;

- That Donovan had been engaged in doing improper "side deals" for his own benefit while
  employed at APD; and

- That Plaintiff "must be living above his means."

15  Statements (1) through (3) are defamatory *per se* because they injure Plaintiff with respect to his

16  "profession, trade or business."  BAJI 7.09.  Thus, damages are presumed and it is not necessary for

17  Donovan to prove special damages.  Moreover, since both Kuula and Borrego made these statements

18  in the course and scope of their employment, APD may be held vicariously liable for defamation.

19  *Kelly v. General Tel. Co.* (1982) 1136 Cal.App.3d 278, 284.

20  The "common interest" privilege set forth in Civil Code section 47 is not a viable defense in

21  this case as Kuula's statements to Alison Rodgers, Greg Borrego and others that he would make

22  Plaintiff's life a "living hell" show malice that would defeat the privilege.  *See, e.g., Mamou v.*

23  *Trendwest Resorts, Inc.,* (2008) 165 Cal.App.4th 686 (evidence that manager called plaintiff a

24  "fucking raghead" sufficient to create triable issue of whether manager had malice that would defeat

25  the common interest privilege).  Similarly, malice will be found where the publication was made

26  with reckless disregard of the truth, as evidenced by a failure to investigate thoroughly and verify the

27  facts stated.  *Rollenhagen v. City of Orange* (1981) 116 Cal.App.3d 414, 423.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    25.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    **6.    Defendants Cannot Limit Damages Based Upon a "Breach of Duty" or "After-Acquired Evidence" Defense**

2

3    Defendants contend that Plaintiff secretly engaged in activities that competed with the

4    Defendant Employers' interests, and thus breached of his duty of loyalty to Defendant Employers,

5    presumably because Defendants are seeking to bolster an "after-acquired evidence" defense to limit

6    damages.  This defense will not prevail at trial, however, because:  (1) Plaintiff has not engaged in

7    any activity that is competitive with the Defendant Employer; (2) Defendant Employer will not be

8    able to show that it was damaged by any alleged breach; (3) Defendant Employer cannot

9    legitimately claim a breach for activities that its own President and other employees have engaged in

10   for their personal benefit; and (4) Plaintiff's activities would not have resulted in his discharge as a

11   matter of settled corporate policy.  *See, e.g., Mamou v. Trendwest Resorts, Inc.* (2008) 165

12   Cal.App.4th 686 (summary judgment for employer reversed: evidence that employee of timeshare

13   sales company attempted to form company engaging in resale of timeshares but did not use

14   employer's trade secrets and did not actually compete against employer could not support a claim by

15   employer that employee was breaching duty of loyalty).  For example, the evidence will show that

16   Kuula and his two children (Brooke and Benjamin Kuula) have freely used Company time,

17   employees, and resources for their personal objectives, and usurped Company opportunities on a

18   scale that is truly astonishing.  For example:

19   •    APD had acquired a property in West Sacramento for development, then Kuula
20        assigned the title to the property to Arizona Cowboys LLC, a personal investment of
     Kuula and his two children.

21   •    Kuula and his daughter have both used Company employees to help design and/or
     improve their personal residences.
22

23   •    Kuula instructed Donovan, Eland, and former employee Kenneth Koss to use their
     work time to identify properties to add to his personal investment portfolio.

24   •    Kuula instructed AHB construction managers to exclusively use a company owned by
     his son Benjamin as the subcontractor to install security systems on projects.
25

26   •    Kuula and his partner Jon Wood utilized a "straw man" entity to stage a mock deed in
     lieu of foreclosure transaction and wipe out the interests of third party investors in an
     apartment project that Kuula and Wood were managing for an ACG investment fund.
27   The investors lost their entire investment and had their tax credits recaptured by the
     IRS; Kuula and Wood eventually transferred title to the property from the straw man
28   to themselves personally.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    26.                    Case No. 2:07-CV-02160-GEB-DAD

1    **<u>Defendants:</u>**

2

3    **7.    Can Plaintiff prevail on his claim for wrongful termination if he resigned his employment?**

4    On August 10, 2007, Donovan met Defendant Greg Borrego at the Sacramento

5    Airport.  During the discussion that ensued, Donovan resigned his position with APD, NorCal.  After

6    resigning. Donovan returned to APD's Sacramento office to collect some of his personal belongings.

7    While at APD's office, Donovan informed some of his subordinates that he had been fired.

8    Matthew Enochs, an employee of American Capital Homes who had been tasked with

9    getting the locks changed in the Sacramento office following Donovan's resignation heard Donovan

10    tell his subordinates that he had been fired.  Enochs responded to this by stating to Donovan that he

11    had been told Donovan had resigned his position.  Enochs stated this in the presence of the same

12    subordinates whom Donovan had informed that he had been fired.  In spite of the fact that both he

13    and his subordinates heard Enochs' statement, and the fact that it directly contradicted what he had

14    just told his subordinates, Donovan did not refute Enochs' assertion that he (Donovan) had in fact

15    resigned.  Instead he merely smiled at Enochs.

16    There are two requirements for evidence of another person's hearsay statement to be

17    admissible against a party as an adoptive admission.  They are:

18    1)  The party has knowledge of the content of the other person's statement; and

19    2)  The party has, by words or conduct, adopted the statement or manifested a belief

20    in the truth of the statement.  (See Cal. Civ. Code §1221.)

21    To prove knowledge of the content of the statement, there must be evidence that the

22    statement was spoken loudly enough, and the party was close enough, for the inference to be drawn

23    that the party heard the statement. (See *People v. Fauber* (1992) 2 Cal.4th 792, 805.)  The trial judge

24    makes this initial determination.  (See *People v. Lebell* (1979) 89 Cal.App.3d 772, 779.)   Here,

25    Enochs' testimony establishes that his statement was made in the presence of Donovan and his

26    subordinates, and that Donovan clearly heard and understood its content.   Accordingly, the

27    knowledge prong of the test is met in this case.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          27.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    Donovan's conduct evidences that the adoption prong is also met.  Once a party has

2    knowledge of another person's statement, the party must use words or conduct indicating the party's

3    adoption of, or belief in, the truth of the hearsay statement in order for the statement to be considered

4    an adoptive admission.  (See Cal. Evid. Code §1221; see also *People v. Silva* (1988) 45 Cal.3d 604,

5    623.)  A party's words that manifest his belief in the truth of another's hearsay statement frequently

6    consist of equivocal or evasive replies to another's accusatory statement directed to the party.  A

7    party's conduct may also indicate a belief in the truth of another's statement, *e.g.*, a party's silence.

8    (See *People v. Sully* (1991) 53 Cal.3d 1195, 1232) or smile (See *People v. Silva, supra,* 45 Cal.3d

9    604, 623) in the face of another's hearsay statement.  An evasive or equivocal reply, or silence, is the

10   more typical reply in adoptive admission cases.  (See *People v. Humphries* (1986) 185 Cal.App.3d

11   1315, 1333.)  Here, the testimony of Enochs establishes that in response to his statement that he had

12   heard Donovan had resigned, Donovan was silent, and merely smiled.  In light of the fact that

13   Enochs' statement was made before the same subordinates whom Donovan had just finished telling

14   that he had been fired, and the fact that Enochs' statement directly contradicted that assertion,

15   Donovan's silence and smile evidence he accepted Enochs' statement as true.

16   Further, in the months proceeding his last day of employment Donovan had set-up his

17   own development company, LSK Development and was telling third parties he was ready to strike

18   out on his own.  And, at the quarterly managers meeting in July of 2007, approximately three weeks

19   before his last day of employment, Donovan had resigned his employment with APD NorCal, and

20   had to be talked into remaining with the Company by Jon Wood and Roger Kuula.

21   **8.    Has Plaintiff named his actual employer as a Defendant?**

22   Plaintiff began his employment on January 4, 2004.  At that time, he executed an

23   offer letter from American Property Development, Northern California Division.  American Property

24   Development, Northern California Division is the operating name of American Property

25   Development, NorCal LLC, a separate and distinct legal entity from American Property

26   Development, Inc., its parent company.  At all times during his employment, Plaintiff was employed

27   by American Property Development, NorCal LLC.  Though he has been advised that this was the

28   case, Plaintiff has never moved to amend his Complaint to name his actual employer.  For these

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                28.                Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    reasons, his wrongful termination, wage, and bonus related claims must all fail.  (See *Laird v.*

2    *Capital Cities/ABD, Inc.* (1998) 68 CalApp.4th 727, 737-743.)

3    **9.    Is Defendant American Capital Homes, Inc. a proper party to this case?**

4    As set forth immediately above, Plaintiff was employed by American Property

5    Development, NorCal LLC.   Plaintiff was never an employee of Defendant American Capital

6    Homes, Inc.   Thus, all of Plaintiff's claims fail as a matter of law as against American Capital

7    Homes, Inc.  (See *Laird v. Capital Cities/ABD, Inc. ,supra,* 68 CalApp.4th 727, 737-743.)

8    **10.    Can the "No Raiding" or "No Discussion" clauses included in the 2007 Profit
         Sharing Plan support Plaintiff's wrongful termination claim if there is no nexus**
9    **between these clauses and Plaintiff's opposition to the 2007 Profit Sharing Plan?**

10    As testified to by Mr. Mathew Eland, Donovan was very concerned that the non-

11    competition clause <u>would bar his secret personal real estate project in Oakley, and he would not</u>

12    <u>therefore sign an agreement containing such a clause.</u>

13    On August 9 and 10, 2007, Donovan had several closed-door meetings with his direct

14    supervisor, individual Defendant Borrego, to discuss the Profit Sharing Plan and the application of

15    its non-competition clause.   Upon learning that the Company was unwilling to drop the non-

16    competition agreement from the final version of the Plan, Donovan resigned his position at APD.  At

17    no time during this process did Donovan inform the Company, Kuula or Borrego of the existence of

18    his Oakley project.

19    Eland's deposition testimony establishes that Donovan refused to sign the Profit

20    Sharing Plan because he was worried about the lawful "during employment" covenant not to

21    compete, rather than the "no-raiding" and "confidentiality" clauses.   Thus, Eland's testimony

22    establishes that Donovan's refusal to sign the profit sharing plan was motivated solely by the

23    existence of the lawful non-compete provision.   Further, during the course of his employment

24    Donovan signed numerous agreements that contained "no-discussion" and "no-raiting" clauses that

25    were substantially identical to those contained in the 2007 Profit Sharing Plan, all without complaint.

26    Under these circumstances, the confidentiality and no-raiding clauses cannot support

27    Donovan's wrongful termination claim, as there is no nexus between those clauses being in the

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                29.                Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    agreement and Donovan's alleged termination for refusing to sign.  (See *Turner v. Anheuser-Busch,*

2    *Inc.* (1994) 7 Cal.App.4[th] 1238.)

3        **11.    Is the No-Competition clause included in the final version of the 2007 Profit**
              **Sharing Plan legal and enforceable in California?**

4

5           The 2007 Profit Sharing Agreement contained a <u>narrow</u> non-competition clause that

6    specifically prohibited employees participating in the plan from competing against the Companies in

7    those areas of land acquisition and development where the Companies were doing business, or

8    planned to do business in the future.

9           More importantly, the clause included in the final version of the 2007 Profit Sharing

10   Plan was specifically limited in its application to the period of time during which the participating

11   employees <u>were employed by the Companies</u>.  Thus, the revised clause had no application once the

12   participating employee left APD.

13          This limitation brings the non-competition within the ambit of clauses permissible

14   under California law, because the non-competition clause does not act as a post-employment

15   restriction.  (See Witkin, Summ. of Cal. Law, 10th Ed. *Agency* §100 ["No-Competition Rule.  An

16   agent or employee is under a duty not to compete with his or her principal on matters connected with

17   the agency, unless the principal and the agent otherwise agree."]; see also, Labor Code § 2863 ["An

18   employee who has any business to transact on his own account, similar to that intrusted to him by his

19   employer, shall always give the preference to the business of the employer."]; *Huong Que, Inc. v.*

20   *Luu* (2007) 150 Cal.App.4[th] 400, 413 ["[I]n the absence of an agreement to the contrary,...agents

21   owed a duty of undivided loyalty, including a duty not to compete,...to their principals."].   See

22   Cal.Bus.Prof. Code § 16600.)  This limitation also dooms Donovan's request for injunctive relief

23   under Business and Professions Code §17200.

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011              30.            Case No. 2:07-CV-02160-GEB-DAD

**12.    Can Plaintiff prevail on his request for an injunction under California Business & Professions Code §17200?**

A change in circumstances, rendering injunctive relief moot or unnecessary, justifies the denial of an injunction. (See *Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal.App.4[th] 548, 574.) An injunction should not be granted for punishment of past acts. (*Ibid*.) Further, the injunctive remedy should not be exercised in the absence of any evidence that the acts are likely to be repeated in the future. (*Ibid*.) Injunctive relief can be denied where the defendant voluntarily discontinues the wrongful conduct.

Here, Plaintiff alleges that Defendants violated California Business and Professions Code §16600 when they included the non-competition, no-discussion, and no raiding clauses in the 2007 Profit Sharing Plan. The First Amended Complaint therefore requests an injunction barring such conduct in the future.

However, as evidenced by Defendants 2008 Profit Sharing Plan and the accompanying Notice of Participation, Defendants have dropped both the no-raiding and no-discussion clauses from the Profit Sharing Plan. Thus, any injunction is inappropriate and unnecessary to prevent such conduct going forward. Further, as set forth above, the no-competition clause included in both the 2007 Profit Sharing Plan and the 2008 Profit Sharing Plan is a narrow restraint that only applies during the time employees are employed by the Defendants. Thus, the no-competition clause is permissible under California law, and should not be enjoined.

**13.    Does Defendants' after acquired evidence that Plaintiff was a faithless servant bar his recovery of damages for wrongful termination?**

Defendants' Faithless Servant/After Acquired Evidence defense should bar Donovan from any recovery based on his alleged wrongful termination.

As the Vice President in charge of the Sacramento office, Donovan was specifically charged with locating potential property for acquisition and development by American Capital Group affiliated entities.

In early 2007, Donovan located a piece of property in Oakley, California which he determined would be profitable to acquire and develop. At the time, Oakley, and the neighboring

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    31.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1  cities of Brentwood and Antioch, were some of the fastest growing cities in the country, and all were

2  in need of multi-family development (i.e. apartments, townhouses, and condominiums), which is

3  among the types of development in which the American Capital Group excels.[5]  The demographics

4  in Oakley and the surrounding areas were such that in the 6 months before Donovan located *his*

5  Oakley parcel, APD was actively searching the area for potential pieces of property to acquire and

6  develop.

7  In fact, prior to identifying the Oakley property for acquisition by himself and his

8  partners, Donovan found a piece of property which was located <u>less than ¼ mile away</u> as a potential

9  target for acquisition by American Capital Group affiliated companies.  Despite this, after locating

10  his Oakley property as a parcel that could be profitably developed, Donovan <u>never</u> informed anyone

11  at any American Capital Group company that he had found the property.[6]  Nor did he present it to

12  any American Capital Group company for potential acquisition.  In doing so, Donovan gave

13  preference to himself over his employer in complete disregard of his duty of loyalty.  (See, Cal.

14  Labor Code §2863 ["An employee who has any business to transact on his own account, similar to

15  that intrusted [SIC] to him by his employer, shall always give preference to the business of the

16  employer."]; see also, Cal. Labor Code §2860 ["Everything which an employee acquires by virtue of

17  his employment, except for the compensation which is due to him from his employer, belongs to the

18  employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of

19  his employment."]; *Burns v. Clark* (1901)133 Cal. 634 [Even when, in the course of employment, an

20  employee uncovers items of value in which the employer lacks any interest, the employer is entitled

21  to those items.]; *Kelegian v. Mgrdichian* (1995) 33 Cal.App.4[th] 982, 988.)

22  In addition, at his deposition, Mat Eland testified that he personally located the

23  Oakley parcel which Donovan acquired for himself and his business partners.    Eland further

---

[5] The American Capital Group Companies excel at building, developing, managing, and selling garden-style apartment complexes.  However, in addition, on specific projects the Companies have also built, or planned to build, single family residences, condos, and /or commercial space.  Thus, contrary to Donovan's repeated assertions, the American Capital Group Companies build and develop more than just apartment buildings.

[6] In order to convince his business partners to acquire and develop the Oakley property Donovan created a pro-forma showing the profit that could be realized by building a combination of multi-family housing and commercial office space on the parcel.  According to Donovan's own pro-forma, at the time they acquired the Oakley property Donovan and his partners hoped to realize a profit of approximately 33% return on investment.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    32.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1  testified that he did so on company time while he was working for APD, and located the property

2  using company resources.  Accordingly, in addition to violating his own duty of loyalty, Donovan

3  improperly utilized the services of another APD employee, as well as other Company resources,

4  when he usurped the business opportunity presented by the Oakley property.

5          Further, when one reviews the email correspondence exchanged between Eland and

6  Donovan regarding the property, it is very clear that these two individuals knew what they were

7  doing was wrong, and took calculated steps to conceal their personal activities from their superiors.

8          Adding insult to injury, as a result of third party discovery conducted in this action, it

9  is now clear that after Donovan acquired the Oakley property for himself and his partners, both he

10  and Eland spent a substantial amount of time working on his personal project when they were

11  supposed to be working for APD and were being paid by it.

12          For instance, while he was employed and being paid by APD NorCal, Donovan:

13          • attended numerous meetings and engaged in voluminous correspondence with

14              staff from the City of Oakley's Planning Department;

15          • set up a website for his private development company, LSK, Inc., and

16              developed all of the content contained therein;

17          • attended numerous meetings and engaged in voluminous correspondence with

18              staff from the Engineering Company that he contracted with to work on his

19              Oakley project;

20          • attended numerous meetings and engaged in voluminous correspondence with

21              staff from East Bay Area Rapid Transit regarding a BART expansion that was

22              slated to be built adjacent to his Oakley property;  and

23          • processed and obtained a General Plan Amendment to the City of Oakley's

24              Master Development Plan, a change to the zoning for his Oakley parcel, and

25              all of the entitlements necessary to build upon and develop his Oakley parcel.

26          But for Donovan's acts of spoliation, there would be even more evidence of his

27  wrongful conduct.  Accordingly, Defendants can establish that Donovan 1) had effectively

28  transferred his loyalty from APD to himself prior to his last day of employment, 2) usurped a

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          33.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1  corporate opportunity when he located the Oakley property and failed to present it to American

2  Capital Group before acquiring it for himself, and 3) improperly spent large amounts of company

3  time and company resources on his personal project while collecting a paycheck from APD NorCal.

4  Had his conduct been discovered before August 10, 2007, APD NorCal would have terminated

5  Donovan's employment for cause, and been justified in doing so.  (See *Camp v. Jeffer, Mangels,*

6  *Butler & Marmaro* (1995) 35 Cal.App.4th 620; see also *Murillo v. Rite Stuff Foods, Inc.* (1998) 65

7  Cal.App.4th 833.)   Thus, even if he can prove he was wrongfully terminated, his recovery of

8  damages should be barred.  (See *Ibid.*)

9  **14.    Does Defendants' after acquired evidence that Plaintiff was a faithless servant**
10  **bar his recovery on his claims for breach of the 2007 Profit Sharing Plan and**
   **work and labor performed?**

11  Donovan's second and third causes of action are alleged as alternative theories of

12  recovery.  The second cause of action seeks to enforce an alleged <u>oral promise</u> that his 2007 profit

13  sharing plan bonus would be "the same or greater than the bonuses that Plaintiff had earned under

14  the 2006 plan," and his third cause of action is stated as a common count for work and labor

15  performed based upon the 2007 Profit Sharing Plan.

16  Here, Defendants deny that any such oral promise was made.  However, assuming for

17  the sake of argument that Donovan can convince the trier of fact that the oral promise actually

18  existed, his conduct related to his Oakley project constitutes sufficient grounds for them to rescind

19  that contract.  (See *Camp v. Jeffer, Mangels, Butler & Marmaro*, *supra*, 35 Cal.App.4th 620; see also

20  *Murillo v. Rite Stuff Foods, Inc.*, *supra*, 65 Cal.App.4th 833.)  Thus, Donovan should not be able to

21  recover under either his Second Cause of Action for Breach of Contract or his Third Cause of

22  Action, the Common Count for Work and Labor Performed.

23  **15.    Must any award of front pay accruing  from the alleged wrongful termination be**
24  **cut-off as of December 2008 because APD NorCal closed its Sacramento Office**
   **for economic reasons and laid off all of the employees working there?**

25  Front pay is an alternative to reinstatement.  (*Dalal v. Alliant Techsystems, Inc.*, 927

26  F.Supp.1374, 1377-1378 (U.S. Dist., D. Colo, 1996); see also *Sandlin v. Corporate Interiors, Inc.*,

27  972 F.2d 1212, 1214-1215 (10th Cir. 1992).)  Where it is proven that a Plaintiff seeking front pay

28  would have been laid off prior to trial, any award of front pay "cuts off" as of the date of the layoff.

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

1   (See *Dalal v. Alliant Techsystems, Inc., supra*, 927 F.Supp. 1374, 1378; see also *Sandlin v.*

2   *Corporate Interiors, Inc.*, *supra*, 972 F.2d 1212, 1215 [analyzing an award of front pay under the

3   ADEA]; *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1097-1098 [analyzing an award of front pay

4   under the ADEA].)

5           In this case, in December of 2008, APD NorCal closed its Sacramento office and laid

6   off the entire Sacramento work force as a result of economic conditions.  Indeed, even the individual

7   who assumed Plaintiff's duties after August 10, 2007 was terminated as part of that layoff.

8   Accordingly, Defendants contend that had he been reinstated or remained employed, Plaintiff too

9   would have been subject to the layoff, and his position liquidated as a result of economic conditions.

10  When one considers the after acquired evidence discussed above, there is no chance APD NorCal, or

11  any of the Defendants in this action, would have moved Plaintiff to another position in the American

12  Capital Group organization.  Under these circumstances Defendants contend that if Plaintiff is

13  entitled to front pay, his damages should be cut off as of the date of the layoff.

14      **16.    Should Plaintiff's economic damages from the alleged wrongful termination be
            reduced as a result of his failure to mitigate?**

15

16          Under California law, an employee who alleges that they have been wrongfully

17  terminated has a duty to mitigate damages through reasonable efforts to achieve other employment.

18  (See *Boehm v. American Broadcasting Company, Inc.*, 929 F.2d 482, 485 (9th Cir 1991).)

19          The general rule is that the measure of recovery by a wrongfully discharged employee

20  is the amount of salary agreed upon for the period of service, less the amount which the employer

21  affirmatively proves the employee has earned or with reasonable effort might have earned from other

22  employment.  (*Id.*; see also *Kern v. Lorentzen*, 899 F.2d 772, 778 (9th Cir. 1990); *California School*

23  *Employees Association v. Personnel Commission of the Pajaro Valley Unified School Dist. Of Santa*

24  *Cruz County* (1973) 30 Cal.App.3d 241, 246; CACI 3961.)

25          Here, Plaintiff testified in his deposition that in the fourteen months between his last

26  day of employment with APD NorCal and the date of his deposition he had only sought interviews

27  with two potential employers, and that he turned down and refused to consider potential positions

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    with both entities.   Accordingly, Defendants contend that Plaintiff has failed to mitigate his

2    damages, and any recovery must be decreased accordingly.

3        **17.    Should the economic value of Plaintiff's work on his Oakley Project be off-set
                against any amounts he could recover for lost wages from Defendants?**

4

5            As set forth above, any damages accruing to Plaintiff as a result of the alleged

6    wrongful termination must be offset by the amount of compensation he has earned since this last day

7    of employment.  (See *Boehm v. American Broadcasting Company, Inc.,* 929 F.2d 482, 485 (9th Cir

8    1991); see also *Kern v. Lorentzen*, 899 F.2d 772, 778 (9th Cir. 1990); *California School Employees*

9    *Association v. Personnel Commission of the Pajaro Valley Unified School Dist. Of Santa Cruz*

10   *County* (1973) 30 Cal.App.3d 241, 246; CACI 3961.).)

11           Here, Plaintiff testified that he has spent much of the time since his last day of

12   employment with APD NorCal working on developing his personal real estate development project

13   in Oakley, California.  Defendants therefore contend that the economic value of those efforts must

14   be deducted from any recovery for wrongful termination, as Plaintiff has essentially gone into

15   business for himself, and would otherwise receive an economic windfall.

16       **18.    Is Plaintiff barred from recovering damages due to his sale of his interest in the
                F65 property because those damages were not foreseeable?**

17

18           To be recoverable as consequential damages resulting from a tort such as an alleged

19   wrongful termination, damages must be reasonably foreseeable.  (See *Palsgraf v. Long Island*

20   *Railroad Co.* (1928) 162 N.E. 99; see also *Northern P.R. Co. v. Wagner*, 86 F.2d 63, 64 (9th Cir.

21   1936).  Similarly, to be recoverable as consequential damages flowing from the breach of a contract

22   damages must be reasonably foreseeable.  (See *Cal. Civ. Code § 3300;* see also *Mitchell v. Clarke*

23   (1886) 71 Cal. 163; *Brandon v. Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226

24   Cal.App.3d 442, 455-456; *Menodoyoma, Inc. v. County of Mendocino* (1970) 8 Cal.App.3d 873, 879

25   [applying the rule of Hadley v. Baxendale (1884 Ex.) 156 Eng.Rep. 145 to contract damages

26   recoverable under Civ. Code §3300; *Applied Equipment Corp. v. Litton Saudi Arabia Limited* (1994)

27   7 Cal.4[th] 503, 515-516.)

28

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                              36.                          Case No. 2:07-CV-02160-GEB-DAD

1    Here, Plaintiff seeks to collect damages for the "premature" sale of his interest in a

2    piece of property called F65 in Sacramento, CA.  Plaintiff alleges he was forced to sell this property

3    as a result of his alleged wrongful termination.  However, Defendants contend that they had no

4    information which would have informed them of Plaintiff's potential need to sell the property and

5    that such sale was not foreseeable as a potential damage flowing from the alleged wrongful

6    termination.  Accordingly, whether he classifies them as damages in tort or in contract, Plaintiff

7    should not be able to collect damages related to his sale of his interest in F65, irrespective of whether

8    he prevails on his claim for wrongful termination or not.

9
10    **19.    Can Plaintiff prevail on his First Cause of Action for Breach of Contract if he cannot show that the at-issue parcels were designated by management as being subject to the bonus plan and eligible for payment of a bonus?**

11    Plaintiff alleges that pursuant to the terms of the Amended 2004 Parcel Acquisition

12    Bonus Plan he was entitled to receive a $20,000.00 bonus for eight (8) parcels which he placed

13    "under contract" prior to December 31, 2004, but was only paid bonuses on two (2) of the parcels.

14    However, his Complaint conveniently omits crucial language contained in the

15    Agreement, which states (emphasis added):

16    It is *possible* for an APDI-NORTHERN CA DIVISION Employee to
17    earn bonuses for specific assigned projects.   The Employee's
       immediate supervisor will advise the Employee at the time that a new
       project is assigned to him/her as to whether or not that specific project
18    qualifies for a bonus.  There may be conditions, economic or other,
       that will make Bonus payment impossible.  *Any Bonus to be paid is*
19    *totally discretionary, based upon management decision, and this*
       *decision is final and binding.*
20

21    Under the Agreement's plain language, whether specific parcels/projects were subject

22    to the agreement was a matter of company discretion, as was the accrual of any bonus.  To date,

23    Plaintiff has not produced <u>any evidence</u> suggesting that the six parcels allegedly supporting his

24    breach of contract claim were identified as being subject to the Agreement by APD Management.

25    Nor has he produced <u>any evidence</u> suggesting that APD management determined the parcels in

26    question were subject to a bonus.  Since it has long been the rule that clauses restricting payment of

27    bonuses to the discretion of management are valid and enforceable in California (See *Brandt v.*

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

1  *Lockheed Missiles & Space* Co (1984) 154 Cal.App.3d 1124.), Plaintiff cannot prevail without

2  making such a showing.

3  Further, Plaintiff's conduct evidences that he knew that none of the six parcels for

4  which he claims a bonus were designated as being subject to the Plan and eligible for bonus.

5  Specifically, Plaintiff continued to work for the Company for nearly three years without ever raising

6  the issue or complaining that he had not been paid an accrued bonus under the plan.  Indeed, he

7  never brought up the issue until he filed this lawsuit.  Plaintiff's failure to produce so much as a

8  single email substantiating his right to the bonuses in question, coupled with his failure to ever raise

9  the issue prior to filing this action, evidences that he knew the parcels in question were not subject to

10  a bonus, and none needed to be paid.

11  **20.    Was Plaintiff required to repay wages previously paid to him or was he allowed
12         to keep a $72,000.00 overpayment mistakenly made to him?**

13  In October of 2006, Plaintiff received an $80,000.00 payment rather than the

14  $8,000.00 payment he was expecting.  <u>He admits this</u>.  Despite this, Plaintiff claims the $72,000.00

15  overpayment was intentional, and Defendants' attempts to allow him to keep it, while at the same

16  time balancing their books, constitutes an improper recovery of wages previously paid to him.  .

17  Every witness with knowledge of the facts and circumstances surrounding the

18  inadvertent overpayment agrees that the $72,000.00 difference between what Plaintiff was expecting

19  and what he received was the result of an interrelated series of mistakes.  Furthermore, every witness

20  who was deposed on the subject, including Plaintiff himself, agrees he was <u>never required to repay a</u>

21  <u>single dollar of the $72,000.00</u>.

22  Instead, in an attempt to balance its books while still allowing Plaintiff to keep the

23  overpayment, Defendants gave Plaintiff a raise, raising his annual salary to $150,000.00 per year,

24  <u>while at the same time telling him that the raise was being given to him in order to offset the</u>

25  <u>overpayment, and would be used for that purpose</u>.  They then treated the $72,000.00 as an advance

26  on that raise, and continued paying Plaintiff his pre-raise salary until the advance was covered.  Had

27  Plaintiff not resigned his employment, the Company's mistaken overpayment would have resulted in

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          38.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1  a tremendous windfall to him, because in addition to keeping an unearned $72,000.00, he would

2  have received a full $150,000.00 annual salary once the prepayment was covered.

3      **21.    Is Plaintiff entitled to waiting time penalties?**

4          As set forth above, Defendants' position in this action is that Plaintiff was never

5  required to repay any wages previously paid to him, and he has been paid all bonuses to which he

6  was legally entitled.  Accordingly, Defendants' position is that Plaintiff is not entitled to, and cannot

7  recover, waiting time penalties under California Labor Code §203.

8      **22.    Can Plaintiff prevail on his claim for defamation?**

9      Plaintiff alleges Defendants Borrego and Kuula made the following statements after his last

10 day of employment:

11  - That Donovan had improperly "taken money" from a third party for the sale of homes
12    located on property that APD had acquired in Turlock, California;

13  - That Donovan had been doing improper "deals" with "Inland," a competitor of APD,
14    while still employed by APD;

15  - That Donovan had been engaged in doing improper "side deals" for his own benefit while
16    employed at APD; and

17  - That Plaintiff "must be living above his means."

18 Plaintiff alleges that each of these statements is defamatory and gives rise to liability.

19          Defendants' position is that the statements, if they were made at all, were either 1)

20 conditionally privileged under Civil Code §47(c) and not made maliciously; 2) were made by

21 employees acting in the course and scope of their employment and therefore cannot give rise to

22 liability (See *King v. United Parcel Serv., Inc.* (2007) 152 Cal. App. 4th 426, 440-42; *Cuenca v.*

23 *Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal. App. 3d 985, 995; *Deaile v.*

24 *General Telephone Co.* (1974) 40 Cal. App. 3d 841, 849; *Williams v. Taylor* (1982) 129 Cal. App.

25 3d 745, 751-52.); 3) were true in fact or in essence and are not therefore defamatory.  (See

26 *Campanelli v. Regents of the Univ. of Cal.* () 44 Cal. App. 4th 572, 581-82; *Swaffield v. Universal*

27 *Ecsco Corp.* (1968) 271 Cal. App. 2d 147, 164; *Hughes v. Hughes* (2004) 122 Cal. App. 4th 931,

28 936.); or 4)  are not defamatory.).  Accordingly, the statements cannot give rise to liability.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          39.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**23.    Are Defendants entitled to Negative Inference Instructions as a result of Plaintiff's spoliation of evidence?**

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." (*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).)   A party to a litigation has a "duty to preserve what it knows, or reasonably should know, is relevant in the action . . . ." (*Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984).)   "The duty to preserve material evidence arises not only during litigation but also extends to that period <u>before the litigation</u> when a party reasonably should know that the evidence may be relevant to anticipated litigation."   (*Silvestri*, 271 F.3d at 591 (emphasis added); *see also Wm. T. Thompson Co.*, 593 F. Supp. at 1455 (holding that duty extends to "a litigant who is on notice that documents and information in its possession are relevant to litigation, or <u>potential litigation</u> . . . .") (emphasis added).)   The duty to preserve extends to electronic information stored on computer hard drives or disks. (*See, e.g.*, *Advantacare Health Partners, LP v. Access IV*, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) (spoliation of information on computer hard drive); *Cabinetware Inc. v. Sullivan*, 1991 WL 327959 (E.D. Cal. July 15, 1991) (Karlton, J.) (spoliation of electronic information stored on disks)).

Courts impose consequences when one party destroys relevant evidence.  In the Ninth Circuit, "a trial court [] has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior."  (*Glover v. Bic Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *see also Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) ("Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case.").   "[A] finding of 'bad faith' is not a prerequisite" to imposing consequences for destroying relevant evidence.  (*Glover*, 6 F.3d at 1329.)  "Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'" (*Id.* (quoting *Akiona*, 938 F.2d at 161).)

Two negative inferences arise from the destruction of evidence: "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                 40.                 Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1   case, and further, that such evidence was adverse to the party that destroyed it." (*Advantacare*

2   *Health Partners, LP v. Access IV*, 2004 WL 1837997, *6 (N.D. Cal. Aug. 17, 2004) (citing

3   *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982)).

4           Accordingly, a trial court is empowered to instruct the jury that it may draw a

5   negative inference from one party's destruction of evidence to the effect that the evidence was

6   relevant and unfavorable to that party. (*See, e.g., Glover*, 6 F.3d at 1330.)

7           The facts demonstrate that Plaintiff unreasonably destroyed evidence relevant to this

8   action, and Defendants are entitled to negative inference jury instructions regarding Plaintiff's

9   destruction of evidence.

10          At the time he destroyed the data, Plaintiff had a duty to preserve the data because he

11  reasonably should have known that the evidence may be relevant to an anticipated litigation. (*See*

12  *Silvestri*, 271 F.3d at 591.) Plaintiff had voiced his dispute about the non-competition clause in the

13  2007 Profit Sharing Agreement, and had already been speaking with a lawyer for over a month.

14  Plaintiff knew his work on his private Oakley property would be considered a violation of the non-

15  competition clause. Thus, the same day he learned that the 2007 Profit Sharing Agreement did not

16  conform to his wishes, and two days before he quit his job, he deleted evidence of his improper side

17  business. Plaintiff himself instituted this lawsuit for breach of contract and wrongful termination,

18  among other things. In sum, at the time he destroyed the data, Plaintiff reasonably could have

19  anticipated this litigation and reasonably should have known that the data was relevant evidence.

20          The facts strongly suggest that Plaintiff acted in bad faith when he destroyed the

21  evidence on the laptop. Nevertheless, Plaintiff would have the Court believe that, by an unfortunate

22  *coincidence*, he found a virus on the laptop and decided to delete all data on the laptop using a

23  computer data deletion software program the same day he received the 2007 Profit Sharing

24  Agreement, and two days before he quit his job. The excuse is all the less likely because, after

25  Plaintiff wiped the data from laptop, he never bothered to re-install any programs so that he could

26  continue to use the laptop—not even a basic operating system. That Plaintiff would concoct such an

27  unbelievable excuse only makes his motives *more* suspect, and makes it *more* likely that a

28  substantial amount of highly relevant data was on the laptop before Plaintiff erased it. Moreover,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          41.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1   under Ninth Circuit law, an adverse inference jury instruction is warranted if the litigation could be

2   anticipated, even if there was no bad faith.  (*Glover*, 6 F.3d at 1329 (holding bad faith is not a

3   prerequisite).)  Thus, even if there was a virus on the laptop, in light of the reasonably anticipated

4   litigation it was patently unreasonable for Plaintiff to erase all data on the laptop.

5           It is impossible to know exactly what evidence Plaintiff erased.  Witnesses have

6   testified that they received e-mails from Plaintiff intimating that he planned to quit.  Further,

7   numerous witnesses have testified that there are emails exchanged with Donovan that they did not

8   back-up regarding his Oakley property.  Moreover, the circumstances of Plaintiff's decision to

9   destroy the evidence are what give rise to the inference that the evidence pertained to the issues in

10  this lawsuit.  In that sense, this case is remarkably similar to *Advantacare*.

11          In that case, the plaintiff alleged that the defendant had improperly copied some

12  amount of plaintiff's computer data to defendants' computer.  (See *Advantacare*, 2004 WL 1837997

13  at *1.)  The court issued a temporary restraining order prohibiting the defendants from destroying

14  any of plaintiff's data.  (*Id.*)  The same day the defendants were served with the temporary

15  restraining order, one of the defendants obtained a computer data deletion software program and

16  used it to delete thousands of files from his home computer.  (*Id.* at *2.)  The plaintiff's expert

17  testified that the files could not be recovered.  (*Id.*)  The trial court found that "[t]he record clearly

18  indicates that [d]efendants destroyed evidence in response to impending litigation.  This behavior

19  suggests that the evidence would have been threatening to the defense of the case and that it is

20  therefore relevant in an evidentiary sense."  (*Id.* at *7.)  Accordingly, based on the circumstances

21  under which the defendants destroyed the evidence, the court adopted the evidentiary presumption

22  that the defendants had copied *every file* on the plaintiff's computer system.  (*Id.* *8.)

23          The circumstances in this case reveal that Plaintiff was attempting to destroy evidence

24  that was relevant to three issues:  First, the facts indicate that Plaintiff destroyed e-mail

25  communications regarding his plans to quit his job at APD.  For months he had been telling third

26  parties he was "ready to strike out on his own," or words to that effect.

27          Second, the evidence on the laptop likely proved Plaintiff quit his job because of his

28  concerns about the non-competition clause in the 2007 Profit Sharing Agreement.  The fact that

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          42.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1  Plaintiff intentionally destroyed the evidence the <u>same day</u> he received the Agreement is sufficient to

2  raise a presumption that evidence relevant to the Agreement was on the laptop.

3          Third, the facts demonstrate the Plaintiff destroyed data and e-mail communications

4  proving that he had transferred his loyalty from APD to himself by spending the majority of his time

5  working on his private Oakley property when he was supposed to be working for APD NorCal.

6  Plaintiff has asserted in this action that the fact that so few of his e-mails exist regarding the Oakley

7  property prove he spent very little time working on the project. So few e-mails exist <u>because</u>

8  <u>Plaintiff destroyed the vast majority of them all</u>.  Once again, the fact that Plaintiff intentionally

9  destroyed the evidence the <u>same day</u> he received the 2007 Profit Sharing Agreement (containing the

10  non-competition clause that prohibited Plaintiff from working on the Oakley property) is sufficient

11  to raise a presumption that the laptop contained substantial evidence of Plaintiff's work on the

12  Oakley property.  Moreover, several witnesses have testified that they recall seeing e-mail

13  communications from Plaintiff regarding the Oakley property.

14          Therefore, Defendants are entitled to the following negative inference jury

15  instructions:

16          1.      Plaintiff quit his employment, as opposed to being fired.

17          2.      Plaintiff quit his employment because he was concerned about the non-

18  compete provision in the 2007 Profit Sharing Plan, and not the "no-raiding" or "no-

19  discussion" clauses.

20          3.      Plaintiff transferred his loyalty from his employer to himself by spending the

21  majority of his time during the Spring and Summer of 2007 working on his private

22  Oakley, California development project.

23  **D.      Abandoned Issues**

24          None for any of the parties.

25                          **V.**
                    **TRIAL PREPARATION**
26

27  **A.      Witnesses to be Called**

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

1      For Plaintiff's witnesses, please see Attachment A, attached hereto.

2      For Defendants' witnesses, please see Attachment B, , attached hereto.

3   **B.     Exhibits, Schedules and Summaries**

4      For Plaintiff's exhibits, please see Attachment C, , attached hereto.

5      For Defendants' exhibits, please see Attachment D, , attached hereto.

6   **C.     Discovery Documents**

7      Plaintiff:   Defendant APD's responses to Plaintiff's Interrogatories (Set One), and

8   Defendant Kuula's responses to Plaintiff's Requests for Admission (Sets One and Two).

9      Defendants: Plaintiff James Donovan's Responses to Interrogatories, Set One.

10  **D.     Further Discovery or Motions**

11      Neither party anticipates any motions regarding further discovery.

12      Plaintiff will be filing a request for judicial notice of the following:

13      •   The First Amended Complaint in the action pending in the United States District

14          Court, Western District of Washington, Case No. 09-00622 JCC entitled

15          *American Property Development, Inc. et al. v. Greenwich Insurance.*

16      •   The action pending in the Superior Court for the State of Washington, King

17          County, Case No. 08-2-43557-1 SEA entitled *American Property Development et*

18          *al. v. James Donovan,* as well as the following documents on file with the court in

19          that action:

20          i.   The Complaint;

21          ii.  Declaration of Stephen P. VanDerhoef in Support of Motion for Sanctions.

22      Both parties anticipate bringing motions *in limine*

23  **E.     Stipulations**

24      None other than the undisputed facts set forth above.

25  **F.     Amendments – Dismissals**

26      None by Defendants.  Plaintiff does not anticipate any amendments or dismissals, but

27  reserves the right to seek leave of the Court for amendment(s) and/or dismissal(s) if justified at trial.

28  **G.     Settlement Negotiations**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

44.

Case No. 2:07-CV-02160-GEB-DAD

1    Plaintiff extended written offers of settlement in September 2008 and February 2009.

2    Plaintiff also served Defendants with an offer of judgment pursuant to California Code of Civil

3    Procedure section 998 in October 2008.  All offers expired without a response or counter-offer.

4    The parties participated in a mediation before the Hon. Raul Ramirez (Ret.) on May

5    5, 2009.  No settlement was reached.  The parties are open to a settlement conference, but not with

6    the Trial Judge.

7    **H.**    **Agreed Statements**

8    Such a statement is neither feasible or advisable.

9    **I.**    **Separate Trial of Issues**

10    Through one of their Motions in Limine, Defendants are requesting the bifurcation of

11    the liability and punitive phases of the trial, and request these issues be tried separately.  Defendants

12    also request that issues involving pure questions of law—such as Plaintiff's right to an injunction—

13    be tried directly to the Court, without aid of the jury.

14    **J.**    **Impartial Experts – Limitation of Experts**

15    The parties do not believe it is necessary for the Court to appoint its own experts or to

16    place additional limits beyond those imposed by the Federal Rules of Civil Procedure on the number

17    of expert witnesses eligible to testify.

18    **K.**    **Attorneys' Fees**

19    Plaintiff is seeking the recovery of attorneys fees on the contract and Labor Code

20    based claims, pursuant to Labor Code section 218.5.  Plaintiff's wrongful termination claim will not

21    support an award of attorneys fees, as it is based upon an alleged violation of public policy, as

22    opposed to the violation of a statute specifically authorizing the recovery of attorneys fees.

23    **L.**    **Trial Exhibits**

24    The parties do not anticipate that there will be any need for the special handling of

25    trial exhibits or for the Court to retain exhibits pending appeal.

26    **M.**    **Estimate of Trial Time**

27    <u>Plaintiff:</u>  12 days.

28    <u>Defendants:</u>  12 days.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    45.                    Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**N.**    **Time Requested for Voir Dire**

<u>Plaintiff:</u>  60  minutes.

<u>Defendants:</u>  180 minutes.

**O.**    **Time Requested for Opening and Closing Statements**

<u>Plaintiff:</u>    45    minutes  for  Opening  Statements  and  120  minutes  for  Closing Statements, and 30 minutes for rebuttal.

<u>Defendants:</u>    45  minutes  for  Opening  Statements  and  120  minutes  for  Closing Statements.

P.    **Further Discovery or Motions**

Excluding  Motions  in  Limine,  all  such  matters  have  already  been  submitted  to  the court.

**VI.**
**TRIAL ALTERNATIVES AND OPTIONS**

A.    **Settlement Discussions**

Plaintiff extended written offers of settlement in September 2008 and February 2009. Plaintiff also served Defendants with an offer of judgment pursuant to California Code of Civil Procedure section 998 in October 2008.  As yet, no counter-offer has been made.

The parties participated in a mediation before the Hon. Raul Ramirez (Ret.) on May 5, 2009. No settlement was reached.

B.    **Consent to Trial Before A Magistrate Judge**

The parties do not consent to trial before a Magistrate Judge.

Dated: July 13, 2009

_____
JAMES T. CAHALAN
CAHALAN & ASSOCIATES
Attorneys for Plaintiff
JAMES C. DONOVAN

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          46.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

1    Dated: July 13, 2009

2

3                                                    _____

4                                                    Kenneth R. O'Brien
                                                     Aaron D. Crews
5                                                    LITTLER MENDELSON
                                                     A Professional Corporation
6                                                    Attorneys for Defendants
                                                     AMERICAN PROPERTY DEVELOPMENT,
                                                     INC., AMERICAN CAPITAL HOMES, INC.,
7                                                    ROGER KUULA, GREG BORREGO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          47.          Case No. 2:07-CV-02160-GEB-DAD

JOINT PRETRIAL STATEMENT

**ATTACHMENT A**

**PLAINTIFF'S WITNESS LIST**

**A.     Percipient Witnesses**

     1.     Jim Donovan

     2.     Alison Rodgers

     3.     Mat Eland

     4.     Matt Enochs

     5.     Levi Singleton

     6.     Amanda Boyajian

     7.     Raj Carr

     8.     Roger Kuula

     9.     Thomas Gay

     10.     Greg Borrego

     11.     Jennifer Gaede

     12.     Brooke Kuula

     13.     Mark O'Brien

     14.     Ken Koss

     15.     Bill Schoenwald

     16.     Jess Dominguez

**B.     Expert Witnesses**

     1.     Paul A. Griffin, Ph.D., Professor of Management, Graduate School of Management, University of California, Davis, Davis, CA 95616-8609, (530) 752-7372.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

**ATTACHMENT B**

**DEFENDANTS' WITNESS LIST**

    **1.**    James Donovan;

3.    Mathew Eland;

4.    Matthew Enochs;

5.    Rebecca Willis;

6.    Angelo Obertello;

7.    Walter Gonzales;

8.    Mark O'Brien;

9.    Brooke Kuula;

10.    Greg Borrego;

11.    Roger Kuula;

12.    Tom Gay;

13.    Mark Menz;

14.    Paul Violich;

15.    Michael Parker;

16.    Jon Wood;

17.    Cindy Metzger;

18.    Nancy Thompson;

19.    Jennifer O'Brien;

20.    Patrick Horn.

21.    Defendants also designate all witnesses identified by Plaintiff.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

**ATTACHMENT C**

**PLAINTIFF'S EXHIBIT LIST**

| Ex. | Document description |
|-----|---------------------|
| A | E-mail from Cindy Metzger to Allison Rodgers, Dated 1/29/07 |
| B | APD, Inc. Northern CA Division Bonus Plan, Dated 1/8/04 |
| C | APD, Inc. Northern CA Division Bonus Plan with markings and initials, Dated 1/8/04 |
| D | APD, Inc. Northern CA Division Bonus Plan, Dated 7/1/04 |
| E | Email from Jim Donovan to greg@1031express.com, Dated 10/14/04 |
| F | Exempt/Non-Exempt Change Status, Several dates in 2006 on document |
| G | Email from jdonovan@acgcorp.net to asmith@acgcorp.net, Dated 10/05/06, 5:34 A.M. |
| H | Email from jdonovan@acgcorp.et to asmith@acgcorp.net, Dated 10/05/06, 9:16 A.M. |
| I | Email from Greg Borrego to Jim Donovan, Dated 1/23/07 |
| J | Email from jdonovan@acgcorp.net to greg@acgcorp.net, Dated 1/23/07 |
| K | Letter from Greg Borrego to Jim Donovan, Dated 1/23/07 |
| L | Interoffice Memorandum to Roger Kuula from Alison Rodgers and Tom Gay, Dated 5/14/07 |
| M | Third Quarter Meeting 2006, Dated October 24th |
| N | Earnings Statement of James Donovan, Pay Date 5/21/2007 |
| O | E-mail dated 7/30/07 and Confidential Memorandum In Re: Notice of Participation in ACG Amended Profit Sharing Plan |
| P | Letter from Alison Rodgers to Tom Gay, Dated 12/11/07 (P01053-54 and D1868-69) |
| Q | Letter from Tom Gay to Alison Rodgers, Dated 12/14/07 (P01055 and |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

| Ex. | Document description |
| --- | --- |
| | D1870) |
| R | Business Card of Tom Gay, Chief Financial Officer of ACG |
| S | Earnings Statement of Jim Donovan with Profit Sharing |
| T | Memo to File from Greg Borrego, Dated 8/20/07 |
| U | E-mail from Roger Kuula to Greg Borrego, Dated 8/8/07, 8:11:33 P.M. |
| V | E-mail from "Jim" to Greg Borrego, Dated 8/10/07, 11:02:15 |
| W | E-mail from Alison Rodgers to Greg Borrego, Dated 8/10/08, 1:23:58 PM |
| X | E-mail from Greg Borrego to Alison Rodgers, Dated 8/10/07, 1:33:09 PM |
| Y | E-mail from Greg Borrego to jdonovan@acgcorp.net, Dated 8/10/07, 2:30:14 PM |
| Z | E-mail from Jim Donovan to greg@acgcorp.net, Dated 8/10/07, 2:30:14 P.M. |
| AA | E-mail from Greg Borrego to Alison Rodgers, Dated 8/10/07, 2:36:15 PM |
| BB | E-mail from Greg Borrego to jdonovan@acgcorp.net, Dated 8/10/07, 2:48:32 PM |
| CC | E-mail from Greg Borrego to Alison Rodgers, Dated 8/10/07, 2:48:46 |
| DD | E-mail from Matt Enochs to Roger Kuula & Greg Borrego, Dated 8/10/07, 3:51:12 PM |
| EE | E-mail from Alison Rodgers to greg@acgcorp.net, Dated 8/10/07, 4:42:26 PM |
| FF | E-mail from Jim Donovan to greg@acgcorp.net, Dated 8/10/07, 4:45:23 PM |
| GG | E-mail from Greg Borrego to Matt Enochs, Dated 8/13/07, 7:26:00 AM |
| HH | E-mail from Greg Borrego to Alison Rodgers, Dated 8/13/07, 4:43:34 PM |
| II | E-mail from Levi Singleton to Greg Borrego, Dated 8/22/07, 8:28:32 AM |
| JJ | American Property Development Residential and Commercial Properties Under Development, Dated 2/22/07 |
| KK | E-mail from Jennifer Gaede to Kama Stuart, Dated 8/13/07, 11:52:46 AM |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          2.

| Ex. | Document description |
|---|---|
| LL | E-mail from Jennifer Gaede to Greg Borrego, Dated 8/14/07, 9:01:50 AM |
| MM | E-mail from Greg Borrego to Roger Kuula, Dated 8/20/07, 3:57:00 PM |
| NN | E-mail from Greg Borrego to Matt Eland & Rajdeep Kaur, Dated 8/13/07, 10:10:00 AM |
| OO | Excerpt of Deposition of Matthew B. Enochs, Dated 2/21/08 |
| PP | Excerpt of Deposition of Mathew J. Eland, Dated 3/4/08 |
| QQ | E-mail from Tom Gay to Alison Rodgers, Dated 5/14/07, with attached Interoffice Memorandum and calculations |
| RR | Typed transcription of handwritten note from notebook made by Alison Rodgers, Dated 7/2007 |
| SS | E-mail from Alison Rodgers, Dated 7/5/07, with attached Profit Share Agreement |
| TT | Confidential Memorandum with attached Amended 2007 Profit Sharing Plan |
| UU | E-mail from Roger Kuula to Alison Smith, Dated 8/9/07 |
| VV | E-mail from Alison Rodgers to Roger Kuula, Dated 8/10/07 |
| WW | [Intentionally omitted] |
| XX | [Intentionally omitted] |
| YY | [Intentionally omitted] |
| ZZ | E-mail from Jim Donovan to Alison Smith, Dated 10/5/06 |
| AAA | E-mail from Greg Borrego to Alison Rodgers and Roger Kuula, Dated 8/10/07 |
| BBB | American Property Development Northern CA Division Conflicts of Interest Statement, 1 page |
| CCC | American Property Development Northern CA Division Ethical Conduct Statement, 1 page |
| DDD | [Intentionally omitted] |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

| Ex. | Document description |
|-----|---------------------|
| EEE | [Intentionally omitted] |
| FFF | E-mail from Brooke Kuula concerning Dev/Design Meeting Notes of 8/6/07 |
| GGG | Amendment Number One to Limited Liability Company Agreement of Arizona Cowboys |
| HHH | Interview Report, Dated 10/29/03, 8:00 AM |
| III | Interview Report, Dated 12/29/03 |
| JJJ | Letter from Nancy Thompson to James Donovan, Dated 1/2/04 |
| LLL | ACG Development Track Record |
| MMM | Certificate of Assumed Business Name, Stamped Date 5/18/1999 |
| NNN | Affidavit Regarding Non-Affiliation, Dated 6/30/04 |
| OOO | Idaho Housing and Finance Association Low-Income Housing Tax Credit Regulatory Agreement |
| | |
| PPP | Filing Form for an LLC, Teton Apartment Associates, LLC, Received Date 3/8/04 |
| QQQ | Assignment of Deed of Trust |
| RRR | Termination of Regulatory Agreement |
| SSS | Articles of Amendment of Teton Apartments (Banc 1) Liquidating, LLC |
| TTT | Application for Registration of Foreign Limited Liability Company |
| UUU | Annual Report Form, No. W 37212 |
| VVV | E-mail from Roger Kuula to Cheryl Clifford, Dated 4/20/04 |
| WWW | Weekly Status Report, Dated 4/26/04 |
| YYY | E-mail from Greg Borrego to Roger Kuula, Dated 9/21/05 |
| ZZZ | Letter from James Donovan to Michael Orfanos, Dated 10/14/05 |
| AAAA | Letter from Mat Eland to Members of the City Council, Dated 10/29/07 |
| BBBB | E-mail from Alison Smith to Roger Kuula, Dated 9/15/06 |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    4.

| Ex. | Document description |
|---|---|
| CCCC | E-mail from Jim Donovan to Roger Kuula, Dated 8/8/07 |
| DDDD | Notice of Bonus Program Eligibility, Dated 5/1/08 (D1871) |
| EEEE | Amendment Number One to Limited Liability Company Agreement of Arizona Cowboys, LLC, Signed Date 7/22/04 |
| FFFF | Assignment Agreement, Dated 5/19/05 |
| GGGG | Assignment Agreement, Dated 5/25/05 |
| HHHH | Letter From Alison Rodgers to Tom Gay, Dated 12/12/07 |
| IIII | E-mail from Jennifer Gaede to Brooke Kuula, Dated 2/28/08 |
| JJJJ | Complaint from the Washington State King County case entitled *American Property Development, Inc. et al. v. James Donovan* |
| KKKK | Tom Gay Email dated 12/15/05, subject "2005 Forecast Final" and attachments |
| LLLL | Tom Gay Email dated 1/15/07, subject "2006 Forecast 1-4-06" |
| MMMM | American Property Development, Inc.: Job Description: VP Acquisitions and Development, dated January 12, 2004 |
| NNNN | American Property Development, Inc., receipt for computer, dated September 6, 2005 |
| OOOO | Confidential Memorandum to James Donovan dated July 31, 2007, re 2007 Notice of Participation in American Capital Group Amended 2007 Profit Sharing Plan, and Plan |
| PPPP | Extract copies of audited balance sheet and income statement for American Property Development, Inc. and American Capital Homes, Inc., for the years ended December 31, 2007 and December 31, 2006, and the years then ended, and attached letter from Repandich & Clevenger CPA's (D01855-1863) |
| QQQQ | Letter from Repanich & Clevenger CPA's dated December 12, 2008, re opinion on net worth of Roger Kuula (D01864) |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    5.

| Ex. | Document description |
|-----|----------------------|
| RRRR | American Capitol Group Employee Policy Handbook, policy 7.11 "Personal Use of Telephones, Equipment and Supplies" |
| SSSS | Undated Redlined Memorandum re 2007 Notice of Participation in American Capital Group Amended 2007 Profit Sharing Plan, and Plan (P000863B-869B) |
| TTTT | Expert Report of Paul A. Griffin, Ph.D., dated November 17, 2008 |
| UUUU | Email from Greg Borrego dated 7/11/07, subject "Updated Development Check List 7-11-07" and attachment. |
| VVVV | Email from Brooke Kuula dated 7/26/06, subject "2nd Quarter 2006 Meeting Notes" and attachment. |
| WWWW | Annual Report Form, No. W 8787, Teton Apartment Associates LLC dated 5/15/06 |
| XXXX | Annual Report Form, No. W 8787, Teton Apartment Associates LLC dated 6/13/05 |
| YYYY | Annual Report Form, No. W 8787, Teton Apartment Associates LLC dated 4/10/08 |
| ZZZZ | Annual Report Form No. W37212, Teton Apartments LLC dated 2/9/07 |
| AAAAA | Purchase & Sale Agreement – APN 46-010-15 |
| BBBBB | Purchase & Sale Agreement – 46-010-03 and 06 |
| CCCCC | Purchase & Sale Agreement – 046-010-17 |
| DDDDD | Purchase & Sale Agreement – 046-110-04 and 05 |
| EEEEE | Purchase & Sale Agreement – 46-010-04 |
| FFFFF | Purchase & Sale Agreement – 248-030-05 |
| GGGGG | Purchase & Sale Agreement – 087-002-017 |
| HHHHH | Purchase & Sale Agreement – 087-002-022 |
| IIIII | Washington Secretary of State Corporations Division Certificate of |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

| Ex. | Document description |
|---|---|
| | Registration and Statement of Information – Luxor Communications, Inc. |
| JJJJJ | Washington Secretary of State Corporations Division Certificate of Registration and Statement of Information – American Property Development of Northern California LLC |
| KKKKK | Washington Secretary of State Corporations Division Certificate of Registration and Statement of Information – Teton Apartments Limited Partnership |
| LLLLL | Washington Secretary of State Corporations Division Certificate of Registration and Statement of Information – Washington First Mortgage Corporation |
| MMMMM | State of Arizona Registrar of Contractors License Information – American Security and Communications LLC |
| NNNNN | State of Arizona, Office of the Corporation Commission Certificate of Good Standing – Teton Apartments, LLC |
| OOOOO | State of Arizona, Office of the Corporation Commission – Articles of Organization, Amended Articles of Organization, Name Change, and Change of Address for Agent |
| PPPPP | Washington Secretary of State Corporations Division Certificate of Registration and Statement of Information – 726 Broadway Associates LLC |
| QQQQQ | Quarterly Goal Reviews 2004 – 2007 – James Donovan |
| RRRRR | Quarterly Performance Reviews 2004 – 2007 – James Donovan |
| SSSSS | Screening Interview notes (D0021-23) |
| TTTTT | Interview Report (D0019) |
| UUUUU | Interview Report (D0017) |
| VVVVV | Reference Check Form (D0012) |
| WWWWW | American Capital Group "Notice of Bonus Program Eligibility" to Mat Eland |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

| Ex. | Document description |
|---|---|
| | dated 5/1/08 |
| XXXXX | 4th Quarter 2006 Evaluation for Jim Donovan |
| YYYYY | Email from Cheryl Clifford to Jim Donovan dated 6/30/04, subject "Bonus Plan" and attachment. |
| ZZZZZ | Arizona Cowboys, LLC, Limited Liability Company Agreement |
| AAAAAA | Email from Alison Rodgers dated 7/5/07, subject "Profit Share Agreement" and attachment. |
| BBBBBB | Corporations: Registration Detail, Charter Equipment Leavings, LLC |
| CCCCCC | Preliminary Change of Ownership Report, Buyor/Transferee Arizona Cowboys LLC |
| DDDDDD | Grant Deed dated 5/24/05, Grantees The Rivers Three LLC and Arizona Cowboys LLC |
| EEEEE | Old Republic Title Company Buyer's Instructions dated 5/24/05, signed by Roger Kuula |
| FFFFFF | Initial Formation / Registration American Property Development of Northern California LLC (from Cal. Sect. of St.) |
| GGGGGG | Email from Matt Enochs dated 8/10/07, subject "Locks" |
| HHHHHH | Email from Grego Borrego dated 12/21/04, subject "Fw: Turlock", with preceding email chain (D0846) |
| IIIIII | Email from Roger Kuula dated 8/27/04, subject "Re: weekly report (DEP00054) |
| JJJJJJ | Sierra Oakcs Kick Off Meeting Notes 08-25-06 |
| KKKKKK | Email from Jim Donovan dated 3/28/07, subject "Re: Victory" |
| LLLLLL | Grant Deed and Buyer Acknowledgement Agreement dated 10/5/07, Grantee Boulden Monticello LLC |
| MMMMMM | Quit Claim Deed dated11/20/08, Quit Claimant Boulden Monticello LLC |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

| Ex. | Document description |
|---|---|
| NNNNNN | Real Estate Excise Tax Affidavit dated 9-14-07, Grantor 726 Broadway Associates LLC |
| OOOOOO | Statutory Warranty Deed dated 12/02/97, Grantee American Home Builders LLC |
| PPPPPP | Real Estate Excise Tax Affidavit dated 2/26/98, Grantee 726 Broadway Associates LLC |
| QQQQQQ | United States Securities and Exchange Commission Form D, Issuer Capitol Place Apartment Associates LLC, signed 5/14/05 |
| RRRRRR | Memorandum of Master Lease Agreement, Landlord Capitol Place Apartment Associates LLC, dated 4/15/05 |
| SSSSSS | Memorandum of Option to Purchase, Optionor Capital Place Apartment Associates, dated 4/15/05 |
| TTTTTT | Quarterly Report – Capitol Place Apartments, Second Quarter - 2008 |
| UUUUUU | Capitol Place Apartment Associates LLC Investment Net Cash Flow Forecast |
| VVVVVV | Pensco Wedneday Webinar Series: "How and Where to Invest in Multi-Family Properties" |
| WWWWWW | Capitol Place Apartment Associates LLC Confidential Private Placement Memorandum |
| ZZZZZZ | Graphic:  Organizational Chart of American Capital Group of Companies |
| AAAAAAA | Graphic:  Chart of entities for which Roger Kuula is majority owner or managing member |
| BBBBBBB | Graphic:  Timeline regarding October 2006 Bonus Payment |
| CCCCCCC | Graphic:  May – Aug. 2007 Deductions from Pay |
| DDDDDDD | Graphic:  Number and types of developments by APD and ACG-related entities |
| EEEEEEE | Graphic:  Timeline for May – August 2007 re termination of Plaintiff |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                                          9.

| Ex. | Document description |
|---|---|
| FFFFFFF | Graphic:  Timeline for acquisition and re-zoning of Oakley property |
| GGGGGGG | Graphic:  Plaintiff's Damages |
| HHHHHHH | Graphic:  Plaintiff Economic Damages |
| IIIIIII | Graphic:  Images and Charts from Report of Expert Paul Griffin |
| JJJJJJJ | PENSCO Webinar Podcast with Wil Lake |
| KKKKKKK | ADP Pacific Northwest Pricing Analysis for American Capital Group |
| LLLLLLL | State of California Secretary of State Limited Liability Company Application for Registration:  American Property Development of Northern California LLC |
| MMMMMMM | State of California Secretary of State Certificate of Good Standing Foreign Limited Liability Company:  American Property Development of Northern California LLC |
| NNNNNNN | State of Washington Secretary of State Certificate of Existence / Authorization of American Property Development of Northern California LLC |
| OOOOOOO | Transcript and video of the deposition of Alison Rodgers |
| PPPPPPP | Transcript and video of the deposition of Roger Kuula |
| QQQQQQQ | Transcript and video of the deposition of Greg Borrego, Vols. I & II |
| RRRRRRR | Transcript and video of the deposition of Thomas Gay |
| SSSSSSS | Transcript and video of the deposition of Jennifer Gaede |
| TTTTTTT | Transcript and video of the deposition of Brooke Kuula |
| UUUUUUU | Transcript and video of the deposition of Mat Eland |
| VVVVVVV | Transcript and video of the deposition of Levi Singleton |
| WWWWWWW | Transcript and video of the deposition of Matt Enochs |
|  | All exhibits identified by Defendants |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833 4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011          10.

**ATTACHMENT D**

**DEFENDANTS' EXHIBIT LIST**

| Ex. | Document description |
|---|---|
| 200. | Ex. 1 to James Donovan's Deposition – American Property Development, Inc. Acknowledgement of receipt re HP NC6200 computer, serial number S/N: CNU5320QVQ |
| 201. | Ex. 2 to James Donovan's Deposition – Handwritten notes for American Capital Group IT Department re Donovan's computer dated August 8, 2007. |
| 202. | Ex. 3 to James Donovan's Deposition – employment offer letter dated January 2, 2004 offering Donovan employment with American Property Development, Inc. (APDI) – Northern California Division. |
| 203. | Ex. 4 to James Donovan's Deposition – Job Description for James Donovan dated January 12, 2004. |
| 204. | Ex. 5 to James Donovan's Deposition – Employee Handbook Receipt and Acknowledgment. |
| 205. | Ex. 6 to James Donovan's Deposition – American Property Development, Inc. – Northern CA Division Conflicts of Interest Statement. |
| 206. | Ex. 7 to James Donovan's Deposition - American Property Development, Inc. – Northern CA Division Ethical Conduct Statement. |
| 207. | Ex 8 to James Donovan's Deposition – American Property Development, Inc. – Northern CA Division Bonus Plan dated 1/8/04. |
| 208. | Ex. 9 to James Donovan's Deposition - American Property Development, Inc. – Northern CA Division Bonus Plan dated 7/1/04. |
| 209. | Ex. 10 to James Donovan's Deposition – Email from Alison Smith to Sandy Chen dated /12/06. |
| 210. | Ex. 11 to James Donovan's Deposition – Email from Alison Smith to Greg Borrego dated 8/21/06. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

| Ex. | Document description |
|---|---|
| 211. | Ex. 12 to James Donovan's Deposition – Earnings Statement for James C. Donovan for pay date 5/19/2006. |
| 212. | Ex. 13 to James Donovan's Deposition – Earnings Statement for James C. Donovan for pay date 6/20/2006. |
| 213. | Ex. 14 to James Donovan's Deposition – email from James Donovan to asmith@acgcorp.net and greg@acgcorp.net, dated October 5, 2006. |
| 214. | Ex. 15 to James Donovan's Deposition – email from James Donovan to greg@acgcorp.net , dated October 5, 2006. |
| 215. | Ex. 17 to James Donovan's Deposition – Memo from Greg Borrego to James Donovan dated January 23, 2007. |
| 216. | Ex. 18 to James Donovan's Deposition – Memo from Alison Rodgers and Tom Gay to Roger Kuula re Jim Donovan dated 5/14/2007. |
| 217. | Ex. 19 to James Donovan's Deposition – Confidential Memorandum from Tom Gay to James Donovan dated 11/28/2005. |
| 218. | Ex. 20 to James Donovan's Deposition – Confidential Memorandum from Tom Gay to James Donovan dated July 13, 2007. |
| 219. | Ex. 21 to James Donovan's Deposition – email from Mat Eland to jdonovan@1031xpress.com dated 4/7/2006. |
| 220. | Ex. 22 to James Donovan's Deposition – email from Jim Donovan to Mat Eland dated 4/27/2006. |
| 221. | Ex. 23 to James Donovan's Deposition – email from Mat Eland to James Donovan dated 4/28/2006. |
| 222. | Ex. 24 to James Donovan's Deposition –email from Jim Donovan to Mat Eland dated 5/11/2006. |
| 223. | Ex. 25 to James Donovan's Deposition – Purchase and Sale Agreement dated May 18, 2006 and exhibits thereto. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011    2.

| Ex. | Document description |
|---|---|
| 224. | Ex. 26 to James Donovan's Deposition – email from jdonovan@1031xpress.com dated 5/2/2006 and .pdfs attached thereto. |
| 225. | Ex. 17 to James Donovan's Deposition – email from Mat Eland to jdonovan@1031xpress.com dated 6/26/2006 and printed .doc file attached thereto. |
| 226. | Ex. 29 to James Donovan's Deposition – Amendment to Purchase and Sale Agreement dated 9/15/2006. |
| 227. | Ex. 30 to James Donovan's Deposition – email string between James Donovan and Kenneth W. Strelo ending December 20, 2006. |
| 228. | Ex. 31 to James Donovan's Deposition – emails exchanged between James Donovan and Erin Clark. |
| 229. | Ex. 32 to James Donovan's Deposition – email string between James Donovan and Angelo Obertello. |
| 230. | Ex. 33 to James Donovan's Deposition – email string between James Donovan and Kenneth Strelo. |
| 231. | Ex. 34 to James Donovan's Deposition – email exchange between James Donovan and Mat Eland dated 6/1/2007. |
| 232. | Ex. 35 to James Donovan's Deposition – City of Oakley Universal Application Form. |
| 233. | Ex. 36 to James Donovan's Deposition – Documents received from Deposition Subpoena to City of Oakley. |
| 234. | Ex. 37 to James Donovan's Deposition – Email from James Donovan to Roger Kuula dated August 8, 2007. |
| 235. | James Donovan's Declaration in Support of Plaintiff's Motion for Partial Summary Judgment. |
| 236. | Expert Report prepared by Defendants' Forensic Computer Expert, Mr. Mark Menz. |
| 237. | Expert Report prepared by Defendants' Real Estate Development Expert, Mr. Michael Parker. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011    3.

| Ex. | Document description |
|---|---|
| 238. | Expert Report prepared by Defendants' economist, Mr. Paul Violich. |
| 239. | Ex. B to Matthew Enochs' Deposition – Confidential Memorandum dated July 31, 2007, 2007 Notice of Participation  in American Capital Group Amended 2007 Profit Sharing Plan. |
| 240. | Ex. C to Matthew Enochs' Deposition – American Capital Group Amended 2007 Profit Sharing Plan, as Amended Effective January 1, 2007 |
| 241. | Transcript of Deposition of James Donovan in Donovan v. American Property Development, et al. |
| 242. | Transcript of Deposition of James Donovan in American Property Development, Inc. v. James Donovan. |
| 243. | Ex. J to Matthew Enochs' Deposition- Confidential Memorandum dated July 31, 2007 and attachments thereto. |
| 244. | Ex. E to Volume 1 of Greg Borrego's Deposition – Email from Jim Donovan to Greg Borrego dated October 14, 2004, and printed attachments thereto. |
| 245. | Ex. F to Volume 1 of Greg Borrego's Deposition –Change of Status Form for Jim Donovan dated September 19, 2006. |
| 246. | Ex. S to Volume 2 of Greg Borrego's Deposition – Earnings Statements for James C. Donovan. |
| 247. | Ex. T to Volume 2 of Greg Borrego's Deposition – Memo to File from Greg Borrego dated August 20, 2007. |
| 248. | Ex. DD to Volume 2 of Greg Borrego's Deposition – Email from Matt Enochs to Roger Kuula and Greg Borrego dated August 10, 2007. |
| 249. | Ex. EE to Volume 2 of Greg Borrego's Deposition – Email from Mat Eland to Greg Borrego dated August 10, 2007. |
|  | Transcript of Deposition of Mat Eland, Volumes 1 and 2 |
| 250. | Transcript of Deposition of Levi Singleton. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

| Ex. | Document description |
|-----|----------------------|
| 251. | Transcript of Deposition of Erin Clark. |
| 252. | Ex. 40 to Erin Clark's Deposition – January 2, 2007 email from Jim Donovan to Erin Clark. |
| 253. | Ex. 41 to Erin Clark's Deposition – email chain exchanged between Jim Donovan and Erin Clark. |
| 254. | Ex. 42 to Erin Clark's Deposition – email chain between Jim Donovan and Erin Clark. |
| 255. | Ex. 43 to Erin Clark's Deposition – email from Jim Donovan to Erin Clark, subject LSK. |
| 256. | Ex. 44 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark, dated February 6, 2007. |
| 257. | Ex. 45 to Erin Clark's Deposition – email chain between Jim Donovan to Erin Clark. |
| 258. | Ex.  46 to Erin Clark's Deposition – email from Jim Donovan to Erin Clake, titled Notification of payment received. |
| 259. | Ex. 47 to Erin Clark's Deposition – email chain between Jim Donovan and Erin Clark. |
| 260. | Ex. 48 to Erin Clark's Deposition – email from Jim Donovan to Erin Clark titled FW: Receipt of your Payment to Erin Clark Design. |
| 261. | Ex. 49 to Erin Clark's Deposition – email chain between Jim Donovan and Erin Clark. |
| 262. | Ex. 50 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled LSK |
| 263. | Ex. 51 to Erin Clark's Deposition –Email from Jim Donovan to Erin Clark titled pics. |
| 264. | Ex. 52 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled photos. |
| 265. | Ex. 53 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled More pics. |
| 266. | Ex. 54 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled Site Plan |
| 267. | Ex. 55 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled FW: Site Plan. |
| 268. | Ex. 56 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled FW: elevations-Oakley Project. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    5.

| Ex. | Document description |
|---|---|
| 269. | Ex. 57 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled Text. |
| 270. | Ex. 58 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled FW: Website hosting agreement. |
| 271. | Ex. 59 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled logo. |
| 272. | Ex. 60 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled text ideas. |
| 273. | Ex. 61 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled Re; latest... |
| 274. | Ex. 62 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled LSK. |
| 275. | Ex. 63 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled Re: LSK. |
| 276. | Ex. 64 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled LSK-Syndication. |
| 277. | Ex. 65 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled Lsk website. |
| 278. | Ex. 66 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled LSK About us page. |
| 279. | Ex. 67 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled LSK-Projects. |
| 280. | Ex. 68 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled LSK Projects-maps. |
| 281. | Ex. 69 to Erin Clark's Deposition – Email from Jim Donovan to Erin Clark titled LSK Projects-Empire Station site plan. |
| 282. | Ex. 70 to Erin Clark's Deposition – Email from Jim Donovan to Jerry Dever and Erin Clark titled LSK Site. |
| 283. | Ex. 71 to Erin Clark's Deposition – Screen shot of the LSK website. |
| 284. | Ex. 72 to Erin Clark's Deposition – Screen shot of the LSK website. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

| Ex. | Document description |
|---|---|
| 285. | Ex. 73 to Erin Clark's Deposition – Screen shot of the LSK website. |
| 286. | Ex. 74 to Erin Clark's Deposition – Screen shot of the LSK website. |
| 287. | Ex. 75 to Erin Clark's Deposition – Screen shot of the LSK website. |
| 288. | Ex. 76 to Erin Clark's Deposition – Screen shot of the LSK website. |
| 289. | Ex. 77 to Erin Clark's Deposition – Screen shot of the LSK website. |
| 290. | Ex. 78 to Erin Clark's Deposition – Email from Jim Donovan to Jerry Dever and Erin Clark titled LSK site. |
| 291. | Ex. 80 to Erin Clark's Deposition – Email from Jerry Dever to Erin Clark titled LSK. |
| 292. | Ex. 1 to Rebecca Willis' Deposition – Documents from the Oakley Planning Department's Empire Station Mixed Use Project File. |
| 293. | Ex. 2 to Rebecca Willis' Deposition- Plat Map showing Empire Station Mixed Use Project. |
| 294. | Ex. 3 to Rebecca Willis' Deposition – Correspondence from the City of Oakley Planning Department to Jim Donovan dated July 2, 2007. |
| 295. | Ex. 4 to Rebecca Willis' Deposition – Email chain exchanged between Jim Donovan and Kenneth Strelo ending November 8, 2006. |
| 296. | Ex. 5 to Rebecca Willis' Deposition – Email from Jim Donovan to Kenneth Strelo dated June 4, 2007. |
| 297. | Ex. 6 to Rebecca Willis' Deposition – Email chain exchanged between Jim Donovan and Kenneth Strelo ending June 5, 2007. |
| 298. | Ex. 7 to Rebecca Willis' Deposition – Email chain exchanged between Jim Donovan and Kenneth Strelo ending June 18, 2007. |
| 299. | Ex. 8 to Rebecca Willis' Deposition – Email chain exchanged between Jim Donovan and Bryan Montgomery ending August 22, 2007. |
| 300. | Ex. 9 to Rebecca Willis' Deposition – Email from Jim Donovan to Wgonzales@bart.gov and others, dated August 22, 2007. |
| 301. | Ex. 10 to Rebecca Willis' Deposition – Email chain exchanged between Jim Donovan and |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

| Ex. | Document description |
|---|---|
|  | Kenneth Strelo ending December 21, 2006. |
| 302. | Ex. 11 to Rebecca Willis' Deposition – Email from Jim Donovan to Jason Vogan and others, dated April 9, 2007. |
| 303. | Ex. 12 to Rebecca Willis' Deposition – Email from Jim Donovan to Rebecca Willis et al., dated April 10, 2007. |
| 304. | Ex. 13 to Rebecca Willis' Deposition – Email from Jim Donovan to Kenneth Strelo and Rebecca Willis dated April 13, 2007. |
| 305. | Ex. 14 to Rebecca Willis' Deposition – Email from Jim Donovan to Kenneth Strelo dated April 18, 2007. |
| 306. | Ex. 15 to Rebecca Willis' Deposition – Email chain exchanged between Jim Donovan and Kenneth Strelo ending May 10, 2007. |
| 307. | Ex. 16 to Rebecca Willis' Deposition – Email from Bryan Montgomery to Brad Nix et al., dated September 19, 2007. |
| 308. | Ex. 17 to Rebecca Willis' Deposition – City of Oakley Notice of Incomplete Application addressed to LSK Development. |
| 309. | Ex. 20 to Rebecca Willis' Deposition – Correspondence from BART to Mariela Pena dated August 17, 2007. |
| 310. | Ex. 21 to Rebecca Willis' Deposition – Email from TAAONDERS@UP.COM to Mariel Pena dated August 17, 2007. |
| 311. | Ex. 22 to Rebecca Willis' Deposition – Correspondence from the City of Antioch to Mariel Pena dated July 13, 2007. |
| 312. | Ex. 23 to Rebecca Willis' Deposition – Determination dated 12/20/2007. |
| 313. | Ex. 1 to Angelo Obertello's Deposition – Transmittal dated August 3, 2007. |
| 314. | Ex. 2 to Angelo Obertello's Deposition – Email from Jim Donovan to Angelo Obertello dated November 8, 2006 with hand written notes. |

LITTLER MENDELSON
A Professional Corporation
2520 Venture Oaks Way
Suite 390
Sacramento, CA  95833.4227
916.830.7200

| Ex. | Document description |
|---|---|
| 315. | Ex. 3 to Angelo Obertello's Deposition – file from CBG Engineering titled "E-Mails" and content thereof. |
| 316. | Ex. 4 to Angelo Obertello's Deposition – Transmittal from CBG Engineering dated June 12, 2007 and attachments. |
| 317. | Ex. 5 to Angelo Obertello's Deposition – Letter of Transmittal from LSK to Angelo Obertello at CBG dated June 9, 2007. |
| 318. | Ex. 6 to Angelo Obertello's Deposition – Transmittal from CBG to J.D. Development Co. dated June 15, 2007. |
| 319. | Ex. 7 to Angelo Obertello's Deposition – CBG memo Empire Station Planning & Entitlement Oakley, Contra Costa County Discussion Items, dated July 20, 2007. |
| 320. | Ex. 8 to Angelo Obertello's Deposition – City of Oakley Notice of Incomplete Application dated July 24, 2007 and attachments thereto. |
| 321. | Ex. 9 to Angelo Obertello's Deposition – Email from Mariela Pena to Jim Donovan dated July 16, 2007. |
| 322. | Ex. 10 to Angelo Obertello's Deposition – Transmittal from CBG to J.D. Development Co. dated August 17, 2007. |
| 323. | Ex. 5 to Mark O'Brien's Deposition – Empire Station Project Budget. |
| 324. | Ex. 6 to Mark O'Brien's Deposition – Budget and Empire Station Plat Map. |
| 325. | Ex. 7 to Mark O'Brien's Deposition – Tolling Agreement between City of Oakley and LSK Development. |
| 326. | Ex. 8 to Mark O'Brien's Deposition - Correspondence from SAFCA to Mr. James Donovan. |
| 327. | Ex. 9 to Mark O'Brien's Deposition - Email chain exchanged between Jim Donovan and Jennifer O'Brien ending February 7, 2007. |
| 328. | Ex. 10 to Mark O'Brien's Deposition – Mark III Oakley Project Budget and attachments. |
| 329. | Ex. 11 to Mark O'Brien's Deposition – Purchase and Sale Agreement for the Sharps |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                    9.

| Ex. | Document description |
|-----|---------------------|
| | Parcel. |
| 330. | Ex. 12 to Mark O'Brien's Deposition – Assignment Agreement executed between J.D. Development Co and James M. Kirk. |
| 331. | Ex. 13 to Mark O'Brien's Deposition – Mark III Budget for Oakley Project. |
| 332. | Ex. 14 to Mark O'Brien's Deposition – Statement re Purchase of Oakley Land. |
| 333. | Ex. 15 to Mark O'Brien's Deposition – Correspondence from CBG Engineering to Jim Donovan at Mark III Engineering dated March 12, 2007. |
| 334. | Ex. 1 to Mat Eland's Deposition, Vol. 2 – Email from Mat Eland to Jim Donovan dated 9/19/2005. |
| 335. | Ex. 2 to Mat Eland's Deposition, Vol. 2 – Email from Mat Eland to Jim Donovan dated 9/21/2005 and attachment thereto . |
| 336. | Ex. 3 to Mat Eland's Deposition, Vol. 2 – Email from Matt Eland to Jim Donovan dated 9/29/2005 and attached budgets. |
| 337. | Ex. 4 to Mat Eland's Deposition, Vol. 2 – Site Information Statement re property in Brentwood, CA. |
| 338. | Ex. 5 to Mat Eland's Deposition, Vol. 2 – Email from Mat Eland to Jim Donovan dated 10/5/2005 and attached Narrative document. |
| 339. | Ex. 6 to Mat Eland's Deposition, Vol. 2 – Due Diligence sheets for 2800 Empire Avenue Brentwood, CA property. |
| 340. | Ex. 7 to Mat Eland's Deposition, Vol. 2 – Email from Mat Eland to Jim Donovan dated 4/27/2006. |
| 341. | Ex. 8 to Mat Eland's Deposition, Vol. 2 – Email from Jim Donovan to Mat Eland dated 4/27/2007. |
| 342. | Ex. 9 to Mat Eland's Deposition, Vol. 2 – Email from Mat Eland to Jim Donovan dated 5/11/2006. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011                          10.

| Ex. | Document description |
|---|---|
| 343. | Ex. 10 to Mat Eland's Deposition, Vol. 2 – Email from Jim Donovan to Mat Eland dated 5/11/2006. |
| 344. | Ex. 11 to Mat Eland's Deposition, Vol. 2 – Email from Mat Eland to Jim Donovan dated 4/28/2006 titled Mat's Personal Email. |
| 345. | Ex. 12 to Mat Eland's Deposition, Vol. 2 – Email from Mat Eland to Jim Donovan dated 9/5/2006. |
| 346. | Map of Oakley/Brentwood/Antioch |
| 347. | Ex. 13 to Mat Eland's Deposition, Vol. 2 – Email from Mat Eland to Jim Donovan dated 6/26/2006 titled Logo, and attachment thereto. |
| 348. | Ex. 14 to Mat Eland's Deposition, Vol. 2 – Email from Matt Eland to Jim Donovan dated 11/3/2006. |
| 349. | Ex. 15 to Mat Eland's Deposition, Vol. 2 – Email chain exchanged between Mat Eland to Jim Donovan dated June 1, 2007 titled Re: The Eagle has Landed. |
| 350. | Ex. 16 to Mat Eland's Deposition, Vol. 2 – LSK letter of transmittal from Mat Eland to Angelo Obertello dated 6/9/2007. |
| 351. | Ex. 17 to Mat Eland's Deposition, Vol. 2 – Email from Jim Donovan to Kenneth Strelo and mat@lskre.com dated June 18, 2007 re: Regarding Empire Station. |
| 352. | Ex. 18 to Mat Eland's Deposition, Vol. 2 – Letter from Mat Eland to the Turlock City Council dated October 29, 2007. |
| 353. | Ex. 19 to Mat Eland's Deposition, Vol. 2 – Eland's Notes dated November 14, 2007. |
| 354. | The American Capital Group Employee Handbook. |
| 355. | Correspondence from Jim Donovan to Bruce Thompson dated September 15, 2006, Re: Oakley. |
| 356. | Email chain exchanged between Rebecca Willis and Jin Donovan ending April 18, 2007, subject: Empire/Neroly. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833-4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

11.

| Ex. | Document description |
|-----|----------------------|
| 357. | December 4, 2006 email from AObertello@CBandG.com to Jim Donovan, subject: Sharp Parcel – Oakley, and .pdf file attached thereto. |
| 358. | Email chain exchanged between Angelo Obertello and Jim Donovan ending February 28, 2007, subject : RE: Empire/Neroly. |
| 359. | Email form AObertello@CBandG.com to Jim Donovan dated March 13, 2007, subject : Oakley – Empire Ave Site. |
| 360. | Document titled APDI-N.California Acquisitions/Development, dated December 14, 2004. |
| 361. | Minutes from the February 19, 2008 City of Oakley Planning Commission Meeting. |
| 362. | Minutes from the March 3, 2008 City of Oakley Planning Commission Meeting. |
| 363. | Demonstrative Exhibit containing timeline of Plaintiff's employment and events proceeding end thereof. |
| 364. | Demonstrative Exhibit containing timeline of Plaintiff's conduct re the Oakley Property. |
| 365. | ADP Earnings Statements for Plaintiff for the years 2006 and 2007. |
| 366. | 2004 American Property Development, Inc. – Northern California Division Conflicts of Interest Statement executed by James Donovan. |
| 367. | 2004 American Property Development, Inc. – Northern California Division Ethical Conduct Statement executed by James Donovan. |
| 368. | American Capital Group Amended 2002 Profit Sharing Plan executed by James Donovan on July 4, 2006. |
| 369. | Confidential Memorandum executed by James Donovan on December 1, 2005 Re: 2005 Notice of Participation in American Capital Group Amended 2002 Profit Sharing Plan. |
| 370. | Job Description for VP of Acquisition/Development American Property Development, Inc. – Northern CA Division dated January 12, 2004. |
| 371. | American Capital Group Cellular Telephone Policies executed by James Donovan on August 6, 2007. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

FIRMWIDE:90897617.1 037725.1011

12.

| Ex. | Document description |
|---|---|
| 372. | Change of Status Form for Jim Donovan dated 5/15/2007. |
| 373. | Change of Status Form for Jim Donovan dated 9/18/2006. |
| 374. | Salary Adjustment Request dated June 6, 2006 for Jim Donovan. |
| 375. | Salary Adjustment Request dated October 24, 2005. |
| 376. | Memo re Time Reporting Policy executed by Jim Donovan on January 8, 2004. |
| 377. | Statement of Employee Time Off for Jim Donovan for the time period spanning January 2005 through the end of July 2007. |
| 378. | ACG 2007 Plan for Jim Donovan. |
| 379. | Email from Alison Smith to Sandy Chen dated June 12, 2006, subject : FW: Jim Donovan – Pay Increase, with attached email chain. |
| 380. | Email from Alison Smith to Greg Borrego dated August 21, 2006 Subject FW: Retroactive Pay, with attached email chain. |
| 381. | Email from Jim Donovan to Alison Smith and Greg Borrego dated October 5, 2006, subject 10/5 Payroll. |
| 382. | Email from Jim Donovan to Greg Borrego dated October 5, 2006, subject RE: 10/5 Payroll, and attached email chain. |
| 383. | Email from Alison Smith to Jim Donovan dated October 6, 2006, subject RE: 10/5 Payroll and, and attached email chain. |
| 384. | January 23, 2007 correspondence to Jim Donovan from Greg Borrego Re 2006/2007 Bonus. |
| 385. | American Capital Group 2007 Conflicts of Interest Statement. |
| 386. | American Capital Group 2007 Ethical Conduct Statement. |
| 387. | Email from Jim Donovan to Greg Borrego dated August, 8, 2007, subject Mat Eland's Bonus %. |
| 388. | Empire Station Project Budget with hand written note "Oakley Proforma," and attachments thereto. |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200

| Ex. | Document description |
|-----|---------------------|
| 389. | Empire Station Project Budget. |
| 390. | Empire Station Impact/Permit Fees. |
| 391. | Empire Station Project Assumptions. |
| 392. | Empire Station Income. |
| 393. | Oakley Project – 5 Acres- 90 Townhomes, 12,500 sf Office—Project Submittal Costs. |
| 394. | First American Title Company- Buyer's Final Statement for Property: 3300 Neroly Road, Oakley, CA. |
| | **All exhibits identified by Plaintiff** |
| | |
| | |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2520 Venture Oaks Way
Suite 390
Sacramento, CA 95833.4227
916.830.7200